[No. 6196.]

JAYNES V. THE PEOPLE.

1. **Criminal Law — Evidence — Confessions —** A confession may be overthrown, like any other evidence, by a proof of independent facts manifesting that the statement attributed to the prisoner cannot be true: e. g., testimony that one indicted for poisoning an animal confessed the fact, and declared that he procured the poison at a particular establishment, may be met by testimony that the establishment in question never used or kept the poison.—Pp. 537-540.

2. **Evidence—Order of Proof—**Evidence proper in chief may in the discretion of the court be received in rebuttal.—P. 540.

3. **Witnesses—Impeachment—**One not a party cannot be discredited by proof of contradictory statements unless first himself interrogated as to the alleged statements.—P. 540.

The time, place, and circumstances must be called to the attention of the witness and fixed with reasonable certainty. —P. 540.

The witness was asked if "on the 17th or 18th of May, 1906, in the house of Smith and in the presence of Smith and his wife he has made the statements." Held sufficient.—P. 542.

4. **Criminal Law—Evidence of Other Crimes**—Generally speaking, evidence imputing another crime to the prisoner is incompetent; otherwise where the evidence of another offense tends to prove some element of the one under investigation, or the motive; and the court should instruct the jury to consider it only for this purpose.—Pp. 542-544.

5. **Instructions**—Refusal of a point substantially given in another form is harmless.—P. 546.

6. **Statutes Construed**—Section 1424, Mills' Stats. (§ 1903, Rev. Stats.), and § 1409, Mills' Stats. (§ 1874, Rev. Stats.) compared and contrasted.—Pp. 546, 547.

*Error to Mesa District Court.*

*Hon. Sprigg Shackleford, Judge.*

Messrs. WHEELER & WEISER and Messrs. LOGAN & GREIR, for plaintiff in error.

Hon. W. H. DICKSON, attorney general, Mr. S. H. THOMPSON, and Mr. HORACE PHELPS, for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error, defendant below, was convicted of killing by poison a horse of the value of $125.00, the property of one O. W. Hoskins, and sentenced to a term in the penitentiary.

As evidence in chief the people introduced the testimony of one Watson, who testified the defendant had confessed to him that he poisoned the horse in question; that the poison used was cyanide of potassium; that he had obtained it from the Colorado Chemical & Spray Manufacturing Company, and that he had a signed a check to pay for it. The defend-

ant, as a witness in his own behalf, denied having made this confession. Griffith, manager of this company, was then called as a witness for the accused, and asked whether or not his company, in the transaction of its business, used cyanide of potassium. To this question an objection was interposed, and sustained. He was then interrogated as to whether or not he ever had this poison in his laboratory or in the establishment of which he was manager. An objection to this question was also interposed and sustained.

A confession in a criminal case, unless it is an admission by plea, is merely evidence to be considered by the jury in determining the guilt of the accused. For this reason evidence that a defendant had confessed the crime for which he is being tried may be rebutted the same as any other. Hence, it is competent for him to show by independent facts that any statement claimed to have been made by him in the confession could not have been true.—12 Cyc. 484; 6 Enc. 586; *Commonwealth v. Howe,* 9 Gray (Mass.) 110; *Commonwealth v. Howe,* 2 Allen (Mass.) 153; *People v. Fox,* 3 N. Y. Supp. 359; *State v. Blodgett,* 92 Pac. 820; 3 Enc. of Evid. 353.

In *Commonwealth v. Howe,* 9 Gray, *supra,* the defendant was indicted for breaking and entering a shop and stealing shoe stock therein. The people produced a witness who testified to confessions made to him by the defendant. According to this confession the defendant had told the witness that he and one George Parmenter broke into and entered the shop and stole the stock, as alleged in the indictment, and that the defendant sold his share of the stock so stolen to one Emory Hobbs. The defendant then offered to show that Parmenter did not break into the shop and aid in stealing the stock, and that Howe did not sell to Cobb any portion of the stock or any

other shoe stock. The trial court ruled that this testimony was incompetent. The supreme court, in passing upon this ruling, stated:

"The confessions of which evidence was given embraced in substance three facts: First, that the defendant broke and entered a shop; second, that George Parmenter was with him in so breaking and entering; third, that the defendant sold the stolen stock to Emory Hobbs. The defendant offered evidence to show that the confessions were not true; that the facts did not occur as in the confessions stated. This evidence was rejected. We think it should have been admitted; that the defendant was not to be concluded by any confessions made, much less by the statements of witnesses that confessions had been made. It was competent to show that the facts could not have taken place as alleged, or did not."

The evidence further discloses that at the time of the alleged confession of the defendant he was intoxicated, and the court concludes by saying: "Especially is this the case where there is evidence leaving it doubtful whether the defendant was in a condition to understand what he was confessing." This condition of the defendant, however, could not change the principle upon which it was held admissible, namely, that it was competent for the purpose of showing that the defendant had not made the statement attributed to him by the confession.

In *Commonwealth v. Howe*, 2 Allen, *supra*, the defendant was indicted for larceny. His confession, which was introduced, tended to prove that soon after the larceny was committed he was in possession of a part of the stolen property, and gave the same to his mother. He offered to prove by his mother that she never had the stolen property. This evidence was rejected and the supreme court held that

it was competent testimony, and should have been admitted because it tended to disprove that he had confessed the crime.

In *People v. Fox, supra,* the defendant made an affidavit that he and four others committed the robbery for which he was on trial by entering the house of the victim and binding him. The defendant offered to prove that none of the four persons mentioned in his affidavit were at the place of the crime at the time therein stated. This was rejected. In considering this ruling the court said:

"Now, it is quite correct to say that the confession may be false in every other particular and yet it may be true that defendant participated in the robbery, but the question here is whether the defendant may not give evidence tending to disprove an allged fact of which the people have given proof against him. Certainly when one side gives evidence tending to prove a fact, the other side may give evidence to the contrary. * * * If the defendant had made a confession that he alone went to Plank's and tied him and his boy, and robbed the house, such a confession, under the other testimony, would have received no credit; but he makes a confession of a transaction not improbable on its face, and evidence is offered tending to show that statements in that confession are not true, and these are such statements, furthermore, that if they are not true, then the truth of the confession becomes doubtful."

It is true in this case that stress is laid upon the fact that the statements which the defendant sought to disprove would render the truth of his confession doubtful if such statements were not true. But that circumstance only goes to the question of the degree of discredit which would be cast upon his confession had he been permitted to introduce testimony tending to establish the fact that the four persons named

in his confession were not with him at the time the crime was committed.

In the case at bar the defendant had denied the confession attributed to him by the testimony of Watson. Whether or not he had made the confession was the important question. Watson testified that the defendant told him he had procured the poison used from the company of which Griffith was the manager. If the defendant had been permitted to show facts from which it could be inferred that his alleged statement to Watson as to where he had secured the poison was not true, and could not be true, that was a circumstance proper for the jury to consider in determining whether or not he had confessed the crime for which he was being tried. The court erred in sustaining the objections to the questions propounded to the witness Griffith.

The confession above referred to is said to have been made on the 8th of May, 1906. After the conclusion of the testimony on behalf of the defendant who, as above stated, denied having made the confession in question, the people were permitted, over his objection, to introduce the testimony of one Hyatt, who testified regarding a confession of the defendant made three days later. Error is assigned to this ruling upon the ground that the testimony of Hyatt was not admissible for the purpose of rebutting any testimony given on behalf of the defendant. Conceding, but not deciding, that it was not proper as rebuttal, it was competent as evidence in chief. Ordinarily; evidence in chief on behalf of the people should be offered when the case on their behalf is being made; but the trial judge is vested with sound discretion in determining the order of proof, and this discretion is not subject to review unless it appears to have been abused to the prejudice of the defendant. No showing of prejudice appears.

The defendant sought to impeach the testimony of the witness Watson by testimony of another witness (Smith) tending to prove that Watson had made statements to him to the effect that the prosecution was "a put up job." This testimony was objected to upon the ground that the proper foundation had not been laid. In order to impeach a witness in this way who is not a party to the action, the proper foundation must be laid.—*Nutter v. O'Donnell,* 6 Colo. 253; *Ryan v. People,* 21 Colo. 119; *Mullin v. McKim,* 22 Colo. 468.

For this purpose it is necessary to ask the witness whom it is sought to impeach if he made the statement which it is claimed he did, and in order that he may have a fair opportunity to understand all the circumstances and explain such statement, his attention must be directed to the time, place and person to whom, or in whose presence the statement was made. This rule, however, is to be given a practical application, and it is sufficient if the time, place, person and substance of the statement are designated with such a degree of certainty that the witness will clearly understand the matter about which he is being interrogated and not be misled.—3 Jones on Evid., § 849; 2 Elliott on Evid., § 974; *Mayer v. Appel,* 13 Ill. App. 87; *Rockwell v. Brown,* 36 N. Y. 207; 1 Whart. on Evid., § 555; *Bennett v. O'Byrne,* 23 Ind. 604; *Nelson v. Iverson,* 24 Ala. 9.

The only reason urged by the people in support of the ruling of the trial court is that the time and place had not been fixed sufficiently definite with respect to when and where it was claimed Watson had made the statement which it was sought to show by the impeaching witness, Smith, he had made. The time and place when and where the conversation occurred between Watson and Smith could probably have been fixed more definitely, and the questions

propounded to Smith relative to his conversation could well have been more definite, but in the circumstances of this case we think the rule requiring the time and place to be fixed with a reasonable degree of certainty was satisfied. Watson was asked if about the 17th or 18th of May, 1906, he was in the house on the farm of Smith in company with Smith. He answered that he might have been, on that day, and looked through the house with Smith. He was then asked if at that time in the presence of Smith and his wife he did not ask Smith what he thought of the prosecution of the defendant, and that Smith replied he thought it was a put up job, and that he, the witness Watson, said he thought so, too. Watson denied making any such statement. He was the principal witness on behalf of the prosecution; he had been employed as a detective to secure evidence against the accused. If he made the statement attributed to him, it is not at all likely he would forget it. So that, in view of his relation to the case, and his interest therein, the time and place when and where he made the statement claimed and the circumstances under which it was made were fixed with such a degree of certainty as to prevent his being misled, and to afford him ample opportunity to refresh his recollection by identifying the conversation referred to, and the time and place where it was claimed to have occurred. The testimony of Smith should have been admitted, and it was error to exclude it.

Error is also assigned upon the action of the trial court in admitting testimony which it is claimed tended to prove that the defendant had committed a crime other than the one for which he was being tried. The prosecuting witness was interrogated as to whether or not he had lost any horses other than the one which it was claimed the defendant had poisoned. He answered that about a month previous to

the death of the horse mentioned in the information he had lost two horses, and related the circumstances under which they died, from which it may appear that they had also been poisoned. There was also testimony to the effect that defendant disliked Hoskins; that there had been difficulty between them, and that for some real or fancied wrong, the defendant had stated that he had "evened up" with Hoskins. This statement, it was claimed, was made subsequent to the death of the horse mentioned in the information. Whether or not the testimony relating to the death of the two horses was admissible, in the circumstances of this case, we shall not undertake to determine, but merely state the rule under which evidence connecting a defendant with an offense other than the one for which he is on trial is admissible, and the caution which should be observed in admitting such testimony for the guidance of court and counsel at another trial.

The general rule is that evidence is not admissible which shows or tends to show that the accused has committed a crime wholly independent of the offense for which he is on trial. It is not proper to raise a presumption of guilt on the ground that, having committed one crime, the depravity it exhibits makes it likely he would commit another. The reason for the rule is that no person shall be convicted of an offense by proving that he is guilty of another. Evidence of this character tends to create a prejudice in the minds of the jury against the accused; multiplies the issues, and may confuse and mislead the jury. The general rule should, therefore, be strictly enforced in all cases where applicable. To this rule, however, there are exceptions, as where the evidence of another offense tends to prove some element of the one for which the accused is being tried, or the motive for committing the acts which it is claimed

constitute the offense for which he is on trial, as where such independent offenses, in connection with the one for which he is being tried, are committed by the accused for some particular purpose which he intended to accomplish.—*Housh v. People,* 24 Colo. 262; *Chipman v. People, Ibid.* 520; *Warford v. People,* 43 Colo. 107, 96 Pac. 556; *Jordan v. Osgood,* 12 Am. Rep. 731, 100 Mass. 457; *Shaffner v. Commonwealth,* 13 Am. Rep. 649, 72 Pa. St. 60; see recapitulation of notes to *People v. Molineux,* 62 L. R. A. 357.

When such testimony is received the trial judge should then limit it to the purpose for which it is admitted. Perhaps we have never determined that a failure to so limit it when not requested by the defendant is reversible error, but we have intimated in *Warford v. The People, supra,* that this course should be pursued by trial courts.

We also think that when evidence of the character under consideration is offered by the district attorney, good practice requires that he should state the purpose for which it is offered, and that the trial judge in the instructions given, when requested by the defendant, should instruct the jury on the subject of the purpose for which they may consider such testimony. These precautions should be observed, because of the fact, as above indicated, that such evidence tends to create a prejudice in the minds of the jury; but of this he will not be permitted to complain if the evidence is competent, and his rights are safeguarded in the manner we have suggested.

Watson, who testified to the confession of the defendant, had been employed by Hoskins to secure testimony. The defendant requested an instruction to the effect that greater care should be exercised in weighing the testimony of detectives, specially employed to hunt up evidence against a defendant, than

in the case of witnesses who are wholly disinterested. This instruction was refused. We have had occasion recently to consider this question in *O'Grady v. People,* 95 Pac. 346, in which we held that the giving of instructions as to the caution to be observed in weighing testimony of private detectives or persons employed to find evidence, is based upon rules of practice rather than of law, and rests largely in the discretion of the trial judge. We do not think it is necessary at this time to consider the question further than as indicated in the above case.

The court instructed the jury to the effect that they were to treat and consider any confessions proven to have been made by the defendant precisely as any other testimony, and if they believed the whole confession to be true, that it was their duty to act upon it as the truth. It is urged by counsel for defendant that this instruction was erroneous, for the reason that an uncorroborated extra-judicial confession is not sufficient to justify a conviction. The court, at the instance of the defendant, did instruct the jury to the effect that a verdict of guilty should not be returned upon the confession of the defendant, unless corroborated by other evidence. If such corroboration was necessary (a point we do not determine), the instruction attacked is not, when taken in connection with the instruction given, as above referred to, susceptible of the construction contended for. Instructions must be considered as a whole, and in view of the caution that the confession of the defendant should be corroborated, we think the instruction objected to only advised the jury that in weighing the testimony relating to the confession of the defendant for the purpose of determining its truth or falsity, they should apply the same rules by which they would be guided in determining the truth or falsity of other testimony in the case.

35

Defendant also requested an instruction on the subject of circumstantial evidence, which was refused. This instruction was to the effect that in order to justify a conviction upon circumstantial evidence, the people must not only prove beyond a reasonable doubt that the circumstances upon which they relied for a conviction were true, but it must appear that such circumstances were absolutely inconsistent upon any reasonable hypothesis with the innocence of the accused. An instruction at the instance of defendant of similar import was given. It is not error to refuse an instruction which is substantially embodied in those given.

The defendant was sentenced to a term in the penitentiary of not less than three nor more than four years. This, it is claimed, was error for the reason that by § 1424; 1 Mills' Stats. (§ 1903, Rev. Stats.), the person convicted of violating its provisions shall be punished by a fine not exceeding four times the amount of the injury proved, or imprisoned in the penitentiary not exceeding two years, or both, as the trial judge may determine. The defendant was not prosecuted or convicted under this section. By § 1409, *ibid.* (§ 1874, Rev. Stats.), it is provided in effect, that if any person shall unlawfully, wantonly, willfully or maliciously kill any horse, the property of another, he shall be guilty of a misdemeanor or a felony, according to the value of the property destroyed; and where the damage to the personal property destroyed exceeds the sum of one hundred dollars, shall, on conviction, be punished by imprisonment in the penitentiary for not less than one, nor more than ten years. It is evident from a reading of the information, that it was laid under this section. The two are entirely different, and cover different subjects. Section 1424 relates to certain acts committed for the purpose of hindering or prevent-

ing the herding of animals in the vicinity where the prohibited acts are committed, with intent to break up, hinder, prevent, destroy or molest the business of herding animals in any portion of the state.    Such was not the charge against the defendant; and as the value of the property was found to be the sum of one hundred and twenty-five dollars, the penalty imposed by the trial judge was within that prescribed by § 1409.

It is also urged on behalf of the defendant that the testimony is insufficient to justify his conviction. In view of the fact that there must be another trial, we decline to express any opinion upon this subject.

For the errors pointed out, the judgment of the district court is reversed and the cause remanded for a new trial.          *Reversed and remanded.*

Chief Justice Steele and Mr. Justice Campbell concur.