[No. 7257.]

## CAMPBELL v. THE PEOPLE.

1. CRIMINAL LAW—*Murder—Information*—An information charging murder includes all degrees of criminal homicide.

2. ——*Wilful Assault.* A policeman who, without justification strikes a citizen with his billy, in a manner calculated to produce death, but without deliberation or premeditation, is guilty of murder in the second degree, if death ensues.

3. ——*Officer Resisting Escape*—The statute (Rev. Stat. Sec. 1635) does not clothe an officer with authority to judge arbitrarily that it is necessary to take the life in order to prevent the rescue of his prisoner. He is not warranted in taking life unless there is an apparent necessity for it; and if he does so he is not permitted to take shelter behind his official character. The question of the absence or existence of the necessity is finally for the jury.

4. ——*Writ of Error—Conviction of Degree of Crime Below that Charged*—Information for Murder. The evidence warranting a conviction for murder in the second degree, the accused has no ground to complain of a conviction of manslaughter.

5. INSTRUCTIONS—*Refusal of Those Given in Other Words*, is not error.

6. ARREST—*Unlawful*—A citizen upon the public streets conducting himself in a quiet and peaceable manner, and not having committed any crime or misdemeanor, is not liable to arrest "for investigation." No officer is clothed with this arbitrary power.

7. OFFICER DE FACTO—*Acts Valid*—A mere minor may be an officer *de facto*. An oath administered by a minor acting as the clerk of a court is as binding as if he were an officer *de jure*.

*Error to Denver District Court.*—Hon. H. C. RIDDLE, Judge.

Messrs. MULLINS & WALDRON, Mr. T. E. MCINTYRE, and Mr. ALEXANDER M. SMITH, for plaintiff in error.

Hon. BENJAMIN GRIFFITH, Attorney General, Mr. ARCHIBALD A. LEE, Deputy Attorney General, and Mr. THEO. M. STUART, JR., Assistant Attorney General, for The People.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Plaintiff in error caused the death of Roy Blackford, and for this homicide was charged with the crime of murder. A jury returned a verdict of voluntary manslaughter, and he was sentenced to the penitentiary for a term of not less than two, nor more than three years. In his behalf it is asserted that the testimony does not support the verdict. The material testimony is substantially as follows:

Plaintiff in error, whom we shall hereafter designate as defendant, was a policeman on duty, about 8:30 in the evening, on Market Street, in the City of Denver. On the part of the people the testimony was, that William Bell, about seventeen years of age, was sitting on the doorstep in front of a market, talking with Roy Blackford, when the defendant accosted and asked him where he was from, and what he was doing, to which Bell replied, he was looking for work. At this time Harry Blackford, a

brother of Roy, stepped up and asked Bell if he was going to work in the morning, and started to sit down by the side of his brother, when the defendant took hold of Harry and threw him on the steps in front of the market. The defendant then struck Harry with his fist, and chased him down the street a short distance, and brought him back. Roy Blackford then said to the defendant: "That is my brother; you hadn't ought to do anything like that," when the defendant struck him (Roy) over the head three times with his club, fracturing his skull, from the effects of which he died the next morning.

Further evidence on the part of the people was to the effect that neither Bell nor the Blackfords used any insulting language toward the defendant, nor had either of them offered him any violence.

The defendant in error testified that he spoke to Bell; that Harry said to the Bell boy, "Come on, kid, if you are going to work in the morning;" that he, the defendant, said to Harry: "Go on down the street." What then occurred, according to the defendant's testimony, is as follows: "And when I told him to go on down the street, he simply crossed in front of me and sat right here * * * in this recess of the doorway; * * * so I told him, "You move on as I told you," and I took him by the arm and gave him a push down the street, and he went sort of diagonally across the sidewalk, down to a position not over twelve feet from this first place, where the boy, Bell, was sitting. They have some steps there * * * he sat on them; and I went again and told him, and said: "You go down the street as I told you to" * * * and he got up and said he didn't have to, his brother was there. * * * He got up and straightened up to me, facing me, instead of going, and as he did, I struck him flat with my hand across the cheek, and started down the street, and knocked his hat off. I picked up his hat and gave it to him, and he wouldn't go, and I took him by the cuff * * * with my

left hand, and I walked back to where this boy, Bell, was. I put my stick under my left arm, and I reached down and got hold of the boy, Bell, by the cuff, and straightened up with him, and as I was turning I saw this other fellow, Roy Blackford, standing with his fist drawn back, and I had the two boys, and I kind of pushed them, and I told him to go away: ''Go on and go away from here;'' and he wouldn't do it. I held the two boys with the one hand, and I pulled my stick out and struck him once, and he was still in the same attitude, and I struck him again, and he went down, and he tried to get up, and I reached down with my hand and told him to stay there. I didn't want to strike him again, at all.''

The defendant further stated that he did not strike Blackford with the intention of killing him, but just to subdue him, to keep him from striking him. As his reason for striking Roy with the club, he stated (quoting from the abstract) : ''I had my hands full with two prisoners, and I had to protect my prisoners and protect myself; protect my prisoners to get them to jail, after I had put them under arrest in order that I might keep them (the prisoners) that I had already arrested, under arrest. These two were under arrest when Roy Blackford approached me and drew back his hand; never had any previous difficulty with Roy; never saw him until just the time I saw him there. There was no feeling of any kind between us; no ill will.''

With respect to the force used, a witness on behalf of the people testified, on cross-examination, in describing the action of the defendant: ''In the first place, he said: ''You want some of it, too?'' and then he hit him then, and then hit the lick, a back-handed blow like that and came back this way (witness illustrating), and he was pretty near down, and then he struck him across here (witness indicating), and then he turned to me and said: ''This is what I ought to do to you.''

Q.  This first lick was across the bridge of the nose?
A.  Yes, sir, and the next one was here, and the next one was up here, right acróss here (witness indicating).

Q.  That first lick was the hardest lick that was struck, wasn't it?  A.  They all three was pretty hard.

Q.  When he jumped at your brother he struck him a very hard lick across the nose?  A.  He didn't jump; he turned around like that (witness illustrating); he turned around very suddenly, and hit him with his billy with all his force."

It will be observed from the foregoing statement, that neither of the parties taken into custody had committed any offense in the presence of the defendant.  It also appears that defendant was not attempting to take these parties into custody by virtue of any legal process, or because they were charged with any felony, from the following questions propounded to him, and his answers thereto:

Q.  The only right you claimed to interfere with him (Bell) at all, was because he was a boy.  Is that all?  A.  A young boy in that neighborhood.

Q.  The only reason in the world that you had for arresting that boy (Harry Blackford) on that night, was, because he refused to go further on down the street without his brother accompanied him?  Isn't that so?  A.  I arrested him for investigation.  The primary cause was because he interfered with me."

As we understand the contention of counsel for defendant, their argument in support of the proposition that the evidence is not sufficient to support the verdict, is to the effect that as defendant committed the homicide in the performance of his official duty, he was not guilty of murder, for the reason that in such circumstances he did not take the life of Blackford with specific intent deliberately formed and acted upon, and consequently, could not be guilty of voluntary manslaughter, because there

was no intent on his part to take Blackford's life. Section 1635, R. S. 1908, is as follows:

"If an officer in the execution of his office in a criminal case, having legal process, be resisted and assaulted, he shall be justified if he kill the assailant. If an officer or private person attempt to take a person charged with treason, murder, rape, burglary, robbery, arson, perjury, forgery, counterfeiting, or other crime denominated felony by the common law, and he or they be resisted in the endeavor to take the person accused, and to prevent the escape of the accused by reason of such resistance, he or she be killed, the officer or private person so killing shall be justified, providing that such officer or private person previous to such killing shall have used all reasonable efforts to take the accused without success, and that from all probability, there was no prospect of being able to prevent injury from such resistance, and the consequent escape of such accused person."

Conceding, for the sake of the argument, that defendant had lawfully arrested Bell and Harry Blackford, the important question to determine, is, whether or not he was justified in taking the life of Roy Blackford, in order to prevent the escape or rescue of his prisoners. The defendant had the right to use such force as was reasonable and apparently necessary to retain the custody of the parties he had arrested; but the law does not clothe an officer with authority to judge arbitrarily of the necessity of killing a person to prevent the rescue of a prisoner. He cannot kill for this purpose, unless there is apparent necessity for it, and the jury must determine from the testimony the absence or existence of such necessity. *State v. Bland,* 97 N. C. 438, 2 S. E. 460. According to the testimony for the people, Roy simply protested against defendant striking his brother. The excuse given by the defendant for striking Roy is to the effect that he approached him and drew back his fist after

he had taken Bell and Harry into custody; and as Roy had refused to get out of the way when commanded to do so, he struck him, in order that he might retain the custody of his prisoners, and prevent Roy from striking him. It was for the jury to determine which version of the circumstances under which the homicide was committed was true, and also to determine from the version they adopted the necessity for the defendant striking Roy with his club. When a peace officer takes a human life in circumstances which the law does not justify, he cannot take shelter behind his character, and claim that he was acting in his official capacity. In such circumstances, his guilt or innocence of a criminal homicide must be determined from the facts established by the testimony, under the rule above announced.

Counsel for defendant also urge that the evidence does not sustain the verdict of voluntary manslaughter, for the reason that the testimony does not disclose the elements of passion or provocation necessary to reduce an intentional killing to that degree of criminal homicide. Conceding this to be correct, the defendant cannot successfully complain. The information charged murder, and included all degrees of criminal homicide. The unjustified use of an instrument on a part of the body of one killed thereby in a manner calculated to take human life tends to prove malice aforethought of the slayer. According to the testimony on behalf of the people, the jury could have determined that striking the deceased on the head several times with the club wielded by defendant was not justified; that so striking the deceased was calculated to cause his death; and although not done with premeditation and deliberation to take the life of the deceased, it was done wilfully and with malice aforethought. In such circumstances the law holds the slayer responsible for the consequences of his acts. So that, as defendant, from the testimony, might have been found

guilty of murder in the second degree, he cannot, for the reason assigned, be heard to say that a conviction for manslaughter is erroneous.

It is next contended that the court erred in denying defendant's motion for a directed verdict of not guilty, interposed at the time the testimony on the part of the prosecution closed. This motion was based upon the ground that the testimony did not establish that deceased died as the result of injuries inflicted by the defendant. This motion was clearly without merit, and was properly overruled.

Error is also assigned upon the refusal of the court to give certain instructions requested by the defendant. These instructions were based upon the theory that defendant, in making the arrest of Bell and Harry Blackford, and in resisting the interference of deceased, was acting within his authority in the capacity of a police officer. The court, on its own motion, gave an instruction which gave the defendant the benefit of the theory upon which the instructions refused were grounded. It is not error to refuse instructions which are substantially covered by those given.

Error is further assigned upon an instruction given, to the effect that a private citizen has a right to use and enjoy the public thoroughfares of the city, and so long as he conducts himself in an orderly and peaceable manner, is not subject to arrest for investigation, and if it appeared from the evidence beyond a reasonable doubt, that Bell and Harry Blackford had not committed any crime, or otherwise broken the law, and that there was no reasonable ground for the arrest of either of these parties, and the defendant, knowing this, sought to arrest and strike or beat the deceased, such acts were not justified under the law, as in such circumstances he would not be acting within the scope of his authority as an officer. In the circumstances of this case, we think this

instruction cannot be successfully challenged. Its effect was to advise the jury that if defendant was knowingly committing an illegal act in arresting the Bell boy and the Blackfords, and, growing out of this, beat deceased, he was not justified in so doing. We think the evidence is ample to warrant the instruction, upon the theory that defendant was knowingly acting without legal authority in arresting any of the parties; and as, according to the evidence on the part of the people, he beat Roy because he had objected to him striking his brother, there was testimony from which it could be inferred that this act was wholly unjustified. Under such a state of facts, which the testimony tended to establish, the defendant stands upon the same plane as though he had been a private citizen committing the same acts.

Other instructions given and complained of will not be considered, because it appears they were not objected to by the defendant at the trial. Aside from this, it is clear that the defendant was not prejudiced by these instructions.

In the motion for a new trial, the defendant set out that the deputy clerk, who administered the oaths to the jury and witnesses, was a minor. It was not stated in the affidavit supporting the motion upon this ground, that defendant was not aware of this at the time the oaths were administered by the deputy; but, waiving this, that official was, at least a *de facto* officer. An oath administered by an officer *de facto* is as valid and binding as if he were an officer *de jure.*—*Walker v. State,* 107 Ala. 5, 18 So. 393; *Izer v. State,* 77 Md. 110, 26 Atl. 282; 30 Cyc. 1416.

The judgment of the District Court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE HILL concur.

*On Petition for Rehearing.*

Mr. JUSTICE GABBERT delivered the opinion of the court:

Counsel contend that defendant was entitled to have the jury advised that the force he was justified in using, was the degree of force which it appeared to him was reasonably necessary under the emergency of the occasion. This is substantially the law, but we think that was the purport of the instruction on the subject, for thereby, the jury were advised in effect, that a police officer, in making an arrest is justified in using such reasonable force, as may be necessary to subject the prisoner to his authority, that the amount of such force must necessarily be left to his sound judgment and discretion, when acting within the scope of his authority, and when not actuated by malice or ill-will; and that in resisting the interference of deceased, the defendant was justified in using such force as might be reasonably necessary in the exercise of a sound discretion, viewed in the light of all the surrounding circumstances present at the time. We think in the circumstances of this case, the fair inference to be drawn from the instruction is, that the jury were advised that defendant was justified to employ that degree of force which it seemed to him was reasonably necessary.

The whole case turns upon the one question of whether the defendant was justified in using the force he did in resisting the interference of the deceased. We think that question was fairly submitted to the jury and that under the facts of this case, they could not have been misled by other instructions given, although they may have been misled by other instructions, although they may not have correctly stated the law, and may not have been warranted from the evidence.

The petition for rehearing is denied.

CHIEF JUSTICE MUSSER and Mr. JUSTICE HILL concur:

Decided March 3, A. D. 1913. Rehearing denied July 7, A. D. 1913.