No. 12,849.

GOULD *v*. THE PEOPLE.

(5 P. [2d] 580)

Decided November 9, 1931. Rehearing denied November 30, 1931.

Mr. Samuel T. Taylor, Mr. I. E. Schachet, for plaintiff in error.

Mr. Clarence L. Ireland, Attorney General, Mr. E. J. Plunkett, Assistant, for the people.

*En Banc.*

Mr. Justice Burke delivered the opinion of the court.

On a verdict of guilty of murder in the first degree plaintiff in error, hereinafter referred to as defendant, was sentenced to life imprisonment. To review that judgment he prosecutes this writ and asks that it be made a supersedeas.

The questions raised by the assignments will be considered under the following heads: (1) Change of venue; (2) admission of testimony; (3) instructions; (4) sufficiency of the evidence. A brief statement of facts is essential to an understanding of the alleged errors and our conclusions.

Defendant is charged with having murdered Claude A. Addington. December 31, 1930, Addington, aged 53, was in the employ of his sister's husband, one Dietz, feeding cattle on the latter's ranch near Gardner in Huerfano county. About 8:30 a. m. on that day Dietz saw him with

his team, riding one horse and leading the other, going in the direction of a stack yard. Some forty-five minutes later he saw him lying by one of the stacks and so reported to Mrs. Dietz, with the comment that Addington was apparently resting or sleeping. Mrs. Dietz, disturbed by this report, went to the stack yard, accompanied by a neighbor woman. There she found her brother apparently unconscious and noticed blood on his head. Badly frightened, and thinking he had been kicked by a horse, she hastened to report to her husband. Others were notified. A doctor, and later the sheriff and the coroner, were called. It was immediately discovered that Addington was dead. He had been shot once in the chest and twice in the head. It is undisputed that the former shot had been fired while Addington was standing and the last two while he was on the ground. The body was lying face up and within a foot of the head an empty .32 Remington automatic pistol shell was picked up. The wounds were apparently made by a bullet of that size. The team stood nearby with check reins and neck yoke fastened and lines dragging. The ground immediately about the body was either covered with hay or badly tramped up, but a short distance removed, faint footprints were found and followed for about 75 feet where the person making them had apparently stood for some time. There the tracks were distinct, and seemingly fresh, though the soil was very dry and a considerable wind had blown the preceding night. These prints had been made by a man's shoe with badly worn rubber heels, a bar across the sole and enlarged tack holes. A deputy sheriff and others then went to the house of defendant, approximately one and three-quarters miles distant. In his yard they found tracks corresponding to those near the stack yard, and two empty shells of the same size and make as the one found there. Defendant was called and asked if the shoes he had on had been worn by him all morning. Answered in the affirmative, the officer walked with him into the yard, noted the simi-

larity between his tracks and those formerly discovered, placed him under arrest and took possession of his shoes. He also obtained from defendant's wife a pistol, fully loaded with shells of the size and make of those above referred to. This pistol had been seen in defendant's possession about a month before. The shoes were fitted into the tracks in defendant's yard and those near the stack yard and the fit was perfect. On the evening of December 30, defendant had called at a neighbor's home and solicited the loan of a .22 rifle "to hunt rabbits." No such weapon being available, he was offered, and declined, a shotgun. Between eight and nine o'clock a. m. of the 31st (probably nearer nine, because children were passing on their way to school) this same neighbor was driving sheep along a road about one-fourth mile from the Dietz stack yard when he saw defendant at a distance of approximately 175 yards. The latter was then crossing the road from the direction of the place where Addington's body was found and going towards the Gould home. A witness testified that in the latter part of July, 1930, in Gardner, defendant, in the presence of himself and others, asked where Addington (then in Gardner) was, and when informed replied, "If I can find him I'm going to kill him." The foregoing facts are uncontradicted, since defendant did not take the stand and no evidence was offered in his behalf.

1. Defendant filed his motion for change of place of trial, basing it upon the alleged prejudice of the inhabitants of Huerfano county and supporting it by the affidavits of himself and his wife and three other persons. These were of a very general and indefinite character and were rebutted by four others of the same kind. The motion was denied. In any event, the question was one well within the discretion of the trial court and no abuse appears. *Abshier v. People,* 87 Colo. 507, 520, 289 Pac. 1081, and cases there cited.

2. Three witnesses testified concerning the tracks and shoes, and two concerning the pistol shells.

This evidence was objected to and motions made to strike it. It is here argued that it is incompetent because indefinite, uncertain and inconclusive. Even so, this goes to its weight only, and that question was for the jury. The same is true of the objection to the admission of the Gould pistol and the testimony of the witness who saw defendant going toward his home on the morning of December 31. The trial court's rulings thereon were correct.

3. Defendant's requested instruction No. 4 was refused by the court and that ruling is assigned as error. In substance the instruction directs the jury to acquit if the evidence as a whole only raises a suspicion of guilt. This, of course, is the law. The court, however, gave the usual and repeatedly approved instruction on reasonable doubt. This fully covered the subject. Once a principle is covered it is no error to refuse to repeat the instruction in other language. *Campbell v. People,* 55 Colo. 302, 309, 133 Pac. 1043; *Jaynes v. People,* 44 Colo. 535, 546, 99 Pac. 325; *Covington v. People,* 36 Colo. 183, 193, 85 Pac. 832.

4. It may well be contended that this is not an unusually strong case, and that its damning facts might be explained away. The truth, however, readily apparent, we think, from our foregoing statement, is that there is evidence to support this verdict, and that those facts were not so explained. It may be that defendant could have done this, but having the opportunity and failing to avail himself of it, he cannot now complain that the jurors drew inferences warranted by the evidence. "There is no dispute here as to the evidence, and it is only a question of whether the jury were at liberty in finding the defendant guilty from the incriminating circumstances. We think they were." *Blanda v. People,* 67 Colo. 541, 547, 189 Pac. 249.

Finding no error in the record, the judgment is affirmed.