No. 15,791.

GALLEGOS *v.* THE PEOPLE.
(179 P. [2d] 272)

Decided March 24, 1947.   Rehearing denied April 14, 1947.

Mr. FOSTER CLINE, Mr. SIDNEY A. EMESON, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE LUXFORD delivered the opinion of the court.

PLAINTIFF in error, to whom we hereinafter refer as defendant, was found guilty of murder of the first degree and sentenced to death, for the killing of Ida Baca, hereinafter mentioned as deceased. To review the judgment the case is here on error.

The record discloses that in March, 1945, defendant came to Denver for the ostensible purpose of buying a truck, but being unable to obtain a permit authorizing the purchase, he thereafter continued to work in Denver, where he remained until the time of the tragedy. In the same month he met deceased in a Larimer street cafe. He bought drinks for her and they rented a room where they remained all night together. This relationship continued for weeks. Defendant's wife and four children came to Denver to reside in June, but this did not seem to interrupt his illicit relations with deceased. They drank together, he gave her money every day, and continued, more frequently, to stay with her all night. He testified he thought so much of her he wanted to be with her all the time. The night before the tragedy they occupied a room on Larimer street. Next morning she complained about the accommodations. They quarreled and she cursed him. He put on his clothes and said he was going home, but she insisted that he was going to live with her. He said it was hard to leave his family and this provoked more abuse from her. Finally, he went home, and, finding his wife dressed, accompanied her to the cafe where she worked. There he met and drank whiskey with a couple of soldiers. During the

day he drank some wine and beer, met and quarreled with deceased again, and she told him she would go with any one she cared to. It is not denied that deceased was a woman of promiscuous character, that she may have had some affection for defendant, but because of his refusal to leave his family for her, she had concluded to break off her relations with him. At four o'clock that afternoon they were together again in a cafe on Larimer street. They had another violent quarrel in which defendant was heard to say that if she did not go with him she wouldn't go with anyone else. Employees of the cafe requested them to stop quarreling and be more quiet, whereupon he left and went to a cafe a block away on Larimer street, where he obtained his pistol, which he had left there some time before, went to the wash room, loaded it and returned to the cafe, where deceased was sitting on a stool at the bar. He testified he thought he sat down at a table; other witnesses testified that he did; he also testified he thought she said something; other witnesses said she did not. In any event he stood up and shot her in the back of the head killing her instantly. He ran out and back to the cafe where he had secured his gun, and attempted to take his life by slashing his throat and thrusting a knife into his mouth. In this attempt he was unsuccessful and quietly surrendered to the officers who took him to the hospital where he recovered in a few days.

Defendant assigns as error: 1. The verdict was the result of passion and prejudice. 2. Conscientious citizens opposed to capital punishment were excluded from the jury. 3. The deputy district attorney who tried the case was guilty of misconduct. 4. The court erred in refusing to give an instruction as to defendant's theory of the case.

1. Under this assignment it is contended that the verdict was the result of passion and prejudice because a witness for the people testified falsely concerning defendant's condition on the day of the shooting and that

the deputy district attorney knew such testimony was false when given, in that it was contrary to a written statement given to the police following the tragedy. The witness testified on direct examination, that on the evening of the tragedy, he observed defendant, and that he was not drunk. On cross-examination he stated that defendant was not intoxicated, but that he might have had a few drinks and he admitted that he had made a signed statement at the police station. On redirect examination he said, "Well, I couldn't say whether he was drunk or sober. Mostly sober." On recross-examination he was asked if he did not say that defendant was not drunk but that he had been drinking, he admitted that he had made the statement, and, upon being asked how he reconciled it with his statement that there was nothing to indicate defendant had been drinking, explained that defendant probably had two or three beers "because persons who frequent taverns, generally do." Witness explained he had never been involved in any kind of a case before, but that if the record showed that he had said defendant was not drunk but had been drinking, it probably was true. Throughout his examination, he continued to testify that defendant was not drunk when the crime was committed. In this testimony he was corroborated by Joe Tamburello, Viola Valdez, and Frank Alba.

The mere fact that sworn testimony may differ from extrajudicial statements does not constitute perjury. This is particularly true where the discrepancy, if any, is extremely slight, as in the case at bar. The questions of credibility of witnesses and of the weight to be given to the testimony of each were submitted to the jury under proper court instructions. The record discloses no misconduct on the part of the assistant district attorney.

2. It is next urged that the jury was not properly selected because conscientious citizens, who were opposed to capital punishment, were excluded therefrom. The court sustained challenges interposed by the

district attorney to several prospective jurors, each of whom had stated on voir dire examination that, under no circumstances, would he vote to impose the penalty of death in the event he was selected as a member of the jury and found defendant guilty of murder of the first degree. A juror with such convictions would ·exclude from his consideration one of the penalties prescribed by law. '35 C.S.A., c. 48, §32. The trial court properly sustained the challenge for cause.

3. Under this assignment it is urged that the deputy district attorney who tried the case was guilty of misconduct in his closing argument to the jury. The transcript does not show what the argument was. It was not stenographically reported, and the affidavits submitted purporting to set forth the alleged objectionable remarks and the rulings of the trial court, are conflicting and indefinite. Under the circumstances there is a presumption of regularity which will prevail, and this court is bound thereby, unless a clear abuse of discretion is apparent, and we are of the opinion that none appears in this case. As was said in *Jordan v. People*, 19 Colo. 417, 422, 36 Pac. 218: "The nature and scope of argument that will be permitted in a cause is largely within the discretion of the presiding judge. It is the duty of the court to see that the bounds of propriety are not transgressed, but an appellate court will only interfere when a gross abuse of discretion is made to appear." See, also, *Bray v. People*, 102 Colo. 199, 202, 78 P. (2d) 366; *Harris v. People*, 113 Colo. 511, 516, 160 P. (2d) 372.

4. Finally it is contended that the court erred in refusing to give an instruction on defendant's theory of the case. The instruction offered is as follows: "The defendant contends the words and conduct of the deceased prior to the shooting excited in the defendant a serious and highly provoking injury sufficient to excite in him an irresistible passion to commit the act. If you find this to be the fact, or if upon this question you

entertain a reasonable doubt, then you will find the defendant guilty of voluntary manslaughter." The trial court refused to give this instruction, but gave the usual and accepted instruction on manslaughter as follows:

"No. 10, if you do not find the defendant guilty of murder of either the first or second degree, it will be your duty to determine whether or not the defendant is guilty of voluntary manslaughter, as defined and explained in these instructions.

"Manslaughter is the unlawful killing of a human being, without malice either express or implied, and without any mixture of deliberation whatever. In cases of voluntary manslaughter there must be a serious and highly provoking injury inflicted upon the person killing or an attempt by the person killed to commit a serious personal injury on the person killing. The killing must be the result of that sudden and violent impulse of passion supposed to be irresistible; for if there should appear to have been an interval between the assault or provocation given and the killing sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge and punished as murder.

"The provocation which will reduce a voluntary killing from the crime of murder to that of manslaughter must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing. In other words, the passion must proceed from an adequate cause.

"If you find the defendant guilty of voluntary manslaughter you should so state in your verdict.

"If you do not find the defendant guilty of murder in the first degree, or of murder in the second degree, or of voluntary manslaughter, you must find him not guilty."

To sustain his position, defendant relies upon the case of *Baker v. People*, 114 Colo. 50, 160 P. (2d) 983, but

that case is not in point, for there the trial court refused or failed to instruct the jury at all on the question of manslaughter. It is not claimed that the killing here involved was accidental. Defendant shot deceased through the head when her back was turned, and twenty or thirty minutes after any quarrel or argument between them. We think that when the trial court gave instruction No. 10 on voluntary manslaughter, it fully and adequately presented defendant's "theory of the case." The instruction fully covered the subject, and, "once a principle is covered it is no error to refuse to repeat the instruction in other language." *Gould v. People*, 89 Colo. 596, 600, 5 P. (2d) 580; *Campbell v. People*, 55 Colo. 302, 309, 133 Pac. 1043; *Jaynes v. People*, 44 Colo. 535, 546, 99 Pac. 325; *Covington v. People*, 36 Colo. 183, 193, 85 Pac. 832; *Wymer v. People*, 114 Colo. 43, 49, 160 P. (2d) 987; *Cahill v. People*, 111 Colo. 173, 177, 138 P. (2d) 936; *Honda v. People*, 111 Colo. 279, 296, 141 P. (2d) 178.

We are of the opinion that there is no reversible error in the record.

The judgment is affirmed, and it is ordered that the sentence thereby imposed be executed during the week beginning Monday, May 26, 1947.