22CA0244 Peo v Ashby 09-12-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 22CA0244
Otero County District Court No. 14CR217
Honorable Mark A. MacDonnell, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Adam Patrick Ashby,

Defendant-Appellant.

ORDER AFFIRMED

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 12, 2024

Philip J. Weiser, Attorney General, Brittany Limes Zehner, Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, James Adam Patrick Ashby, appeals the district court's order denying his Crim. P. 35(c) motion entered after an evidentiary hearing.  We affirm.

## I.     Background

¶ 2     Ashby worked as a police officer for the Rocky Ford Police Department.  While on patrol with a civilian ride-along passenger, he saw Jack Jacquez, the victim, riding his skateboard in the street.

¶ 3     Ashby pulled up next to Jacquez, and Jacquez got off his skateboard and moved to the side of the road.  Ashby spoke to Jacquez through the open passenger side window, saying he wanted to talk with him.  According to Ashby, Jacquez said "fuck you" before walking off.  But the passenger did not hear Jacquez say this.  Rather, the passenger heard Jacquez say something about "home."

¶ 4     Jacquez turned around and began walking toward a nearby house.  Ashby got out of the car and followed him.  Jacquez reached into his backpack as he walked up to the house.  Ashby later told investigators that he thought that Jacquez could be reaching into the backpack for a weapon.  The investigators found Jacquez's housekeys, but no weapon, in the backpack.

¶ 5    Jacquez began knocking on the door, and called for his mother, Violet Jacquez,[1] to answer the door.  Ashby stepped on the porch, grabbed Jacquez by the arm, drew his pistol, and pointed it at him.  Ashby told him to remove his hand from the backpack, and he complied.  There was nothing in his hand.  Ashby holstered the pistol.

¶ 6    Ms. Jacquez opened the door.  Ashby said that he was still holding Jacquez's wrist when the door opened.  But Ms. Jacquez testified that Ashby was engaged in a "tug of war" over Jacquez's skateboard.  Ashby said that, as he held onto Jacquez's wrist, Jacquez pulled him inside.  In contrast, Ms. Jacquez testified that Ashby won the tug of war over the skateboard, which he tossed into the yard.

¶ 7    According to Ashby, Jacquez picked up a baseball bat, and Ashby ordered him to drop it.  But Ms. Jacquez testified that Jacquez did not pick up a bat, and Ashby never ordered him to do anything.

---

[1]  Because this case involves two people with the last name Jacquez, like the district court, we will refer to Violet Jacquez as Ms. Jacquez.

¶ 8    Ms. Jacquez said that Jacquez stepped into the kitchen and that, while Ashby stood in the doorway, he shot Jacquez in the back as Jacquez walked away. In contrast, Ashby later told investigators that Jacquez was about to hit him with the bat when he fired.

¶ 9    Ms. Jacquez testified that after Ashby shot Jacquez, Ashby ran into the yard, she went past Jacquez to see where Ashby went, she went past Jacquez again to get her phone to call her daughter, and she hit an object with her foot and tossed it into her bedroom. She testified that she later found out that the object was the bat. She said the bat had been by the refrigerator that night and that she never went into the bedroom or saw anyone go into the bedroom and did not hear Ashby say, "Drop the bat."

¶ 10   The jury was shown photos of the bat on the bed in the bedroom, partially covered with a blanket. In response to the jury question, "Who put the bat on the bed, if you know?" Ms. Jacquez testified that she did not know.

¶ 11   Jacquez died from a single gunshot wound to the middle of his back.

¶ 12   The Rocky Ford Police Department asked a special team of officers from other law enforcement agencies to investigate the

shooting. Corporal Randy Garrett, Sergeant Angelo Griego, Chief of Police Frank Gallegos, Captain Micky Bethel, and Sergeant Vince Fraker, among others, were involved in the investigation.

¶ 13     Following the team's investigation, the prosecution charged Ashby, and he went to trial on the second degree murder charge. Ashby raised two affirmative defenses at trial. First, he maintained that he had acted in self-defense under section 18-1-704, C.R.S. 2024. Second, he asserted that he was legally authorized to use deadly physical force as a peace officer under section 18-1-707, C.R.S. 2024.

¶ 14     The jury convicted Jacquez of second degree murder, and the trial court sentenced him to sixteen years in the Department of Corrections.

¶ 15     After Ashby's conviction was affirmed on direct appeal, *People v. Ashby*, (Colo. App. No. 16CA2140, July 11, 2019) (not published pursuant to C.A.R. 35(e)), he timely filed a Crim. P. 35(c) motion. In his motion, Ashby identified, as relevant on appeal, two pieces of discovery that contained references to Ms. Jacquez saying that she "hid" or "covered" the bat:

(1)   Sergeant Fraker's affidavit in support of his search warrant, which contained the following statement: "Jack Jacquez's mother told Capt. Bethel she hid the baseball bat."

(2)   Audio recording of dispatch and radio traffic from the night of the offense, which contained a statement from Captain Bethel: "The Chief came over and asked [Ms. Jacquez], and she told him, 'I took the bat, and I tried to cover it up,' and she told him that she is being honest. The Chief says, 'she just told me that she put the bat in her room to cover it up . . . .'"

¶ 16    In his postconviction motion, Ashby contended that his trial counsel, Carrie Slinkard and Michael Lowe, were ineffective and that his due process rights were violated because the prosecution elicited false testimony, among other claims. The district court held an evidentiary hearing and issued an order, as relevant here, denying both of those claims.

¶ 17    This appeal followed.[2]

## II.    Standard of Review

¶ 18    A postconviction court's ruling on a Rule 35(c) motion after a hearing presents a mixed question of fact and law. *People v. Sharp*, 2019 COA 133, ¶ 12. "We defer to the court's findings of fact if they have record support, but we review any legal conclusions de novo." *Id.* The district court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing. *People v. Hardin*, 2016 COA 175, ¶ 39.

## III.    Analysis

### A.    Ineffective Assistance of Trial Counsel

¶ 19    Ashby contends that the district court erred by denying his Crim. P. 35(c) claim, after an evidentiary hearing, that his trial counsel were ineffective for (1) inadequately investigating the case; (2) failing to cross-examine Ms. Jacquez about hiding or covering the bat; and (3) failing to directly introduce evidence that Ms.

---

[2] Claims raised in Ashby's Crim. P. 35(c) motion but not reasserted on appeal have been abandoned. *See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

Jacquez said that the bat was hidden or covered through various police officers.  We discern no error.

### 1.  Applicable Law

¶ 20    When evaluating claims of ineffective assistance of trial counsel, we apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003); *People v. Long*, 126 P.3d 284, 286 (Colo. App. 2005).  To prevail on such a claim, a defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced him.  *Strickland*, 466 U.S. at 686.

¶ 21    To establish deficient performance, a defendant must prove that counsel's representation "fell below an objective standard of reasonableness."  *Id.* at 688.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (citation omitted).  To establish prejudice, a defendant must show that there is a reasonable probability that, absent the errors, "the result of the proceeding would have been different."  *Id.* at 694.

¶ 22    A district court may reject an ineffective assistance of counsel claim if the defendant fails to demonstrate either deficient performance or prejudice. *People v. Aguilar*, 2012 COA 181, ¶ 9.

## 2.    Application

### a.    Inadequate Investigation

¶ 23    Ashby first claims his trial counsel were ineffective for failing to adequately investigate before trial, which would have led them to discover Ms. Jacquez's statements about hiding or covering the bat. We disagree.

¶ 24    Counsel has a duty to make reasonable investigations, *Strickland*, 466 U.S. at 691, or to make an informed decision that further investigation into a particular defense is unnecessary, *Dunlap v. People*, 173 P.3d 1054, 1066 (Colo. 2007). A reasonable investigation means one that is "sufficient to reveal potential defenses and the facts relevant to guilt." *Davis v. People*, 871 P.2d 769, 773 (Colo. 1994).

¶ 25    In its order, the district court did not explicitly credit Slinkard's testimony, but it did so implicitly by exclusively relying on her testimony to make the following findings: Slinkard spoke with both Captain Bethel and Chief Gallegos prior to trial; and

8

Slinkard and Lowe both independently reviewed discovery, which included various reports from police officers who had been on the scene.

¶ 26     Ashby contends that the record does not support that Slinkard individually interviewed Captain Bethel or Chief Gallegos and that the district court ignored Captain Bethel and Sergeant Griego's contrary testimony.  Captain Bethel and Sergeant Griego both testified that Slinkard had not met with them individually but rather met with them in a group with other police officers.  But Ashby's focus on an individual meeting versus a group meeting is misplaced because the district court found that Slinkard had spoken with Captain Bethel and Chief Gallegos without specifying in what setting.  Moreover, where such credibility determinations have record support — as they do here — we will not disturb them. *See Dunlap*, 173 P.3d at 1061-62; *see also People v. Vicente-Sontay*, 2014 COA 175, ¶ 15 (recognizing that the district court determines the "weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing").

¶ 27     Ashby also contends that even if counsel did individually interview the officers, the investigation was inadequate because

counsel did not specifically ask them about the bat or Ms. Jacquez's statements about the bat. Slinkard testified that she did not remember if she had asked Sergeant Fraker and Chief Gallegos about the bat and did not remember if she was aware that Ms. Jacquez had said she had put the bat on the bed to cover it up. Slinkard also testified that she knew Ms. Jacquez had moved the bat and that no witness she spoke with told her that Ms. Jacquez said that she hid the bat. Lowe testified that, before trial, he would have almost certainly read the statement in Sergeant Fraker's search warrant affidavit about Ms. Jacquez allegedly saying she hid the bat, but Lowe could not specially recall at the time of the 35(c) hearing.

¶ 28    Counsel's specific inability to recall does not overcome the presumption that, under the circumstances, counsels' actions should be considered sound trial strategy. *Cf. People v. Gandiaga*, 70 P.3d 523, 527 (Colo. App. 2002) (concluding that defendant failed to carry their burden of proof on ineffective assistance of trial counsel claim where trial counsel could not specifically recall discussing plea offer with defendant but felt certain they had done so). And to the extent Ashby cites other evidence in the record in

support of his contention, he merely asks us to reweigh conflicting evidence — which we cannot do.  *See Dunlap*, 173 P.3d at 1061-62.

¶ 29    Further, as noted, the court credited both trial counsels' testimony that they had each independently reviewed the discovery before trial, and we agree with the People that Ashby did not present any evidence that had counsel asked the officers about Ms. Jacquez's alleged statement before trial, it would have revealed any further information beyond what was in the search warrant affidavit and audio recording.  Thus, Ashby has not shown how he was prejudiced by any failure of counsel to ask the officers about Ms. Jacquez's purported statement about hiding or covering the bat. *See People v. Chambers*, 900 P.2d 1249, 1252 (Colo. App. 1994) ("[D]efendant cannot demonstrate that counsel's failure to investigate resulted in any prejudice to him . . . [u]nless such investigation would have discovered substantial evidence which, if introduced, might reasonably have led to a different result . . . .").

¶ 30    In sum, Ashby failed to show trial counsels' performance was deficient or that he was prejudiced.

### b.    Cross-Examination

¶ 31    Ashby also contends that trial counsel were ineffective for failing to cross-examine Ms. Jacquez about her purported prior inconsistent statements about hiding or covering the bat.  We disagree.

¶ 32    Defense counsel has the final word on strategic decisions, including "what witnesses to call (excepting the defendant), whether and how to conduct cross-examination, what jurors to accept or strike, and what trial motions to make."  *Arko v. People*, 183 P.3d 555, 558 (Colo. 2008) (quoting *People v. Curtis*, 681 P.2d 504, 511 (Colo. 1984)).

¶ 33    The district court found that Slinkard testified that she believed at the time of her cross-examination of Ms. Jacquez that Ms. Jacquez's credibility had been put into question.  The court also found that Slinkard testified that she took care not to cross-examine Ms. Jacquez too aggressively because she was the victim of a traumatic crime and that it might not come across well to the jury for her to do so.  The court noted that Slinkard testified that there was a multitude of factors to consider when deciding when to stop cross-examination, including that juries can become

tired and stop paying attention, and that deciding how far to take a cross-examination was a matter of trial strategy. Finally, the court credited Lowe's testimony that had he felt there was a topic that Slinkard had not covered during the cross-examination of Ms. Jacquez, he would have brought it to Slinkard's attention.

¶ 34 Ashby asserts that these factual findings were not supported by the record because counsel did not specifically impeach Ms. Jacquez with her statement about hiding or covering the bat and because Slinkard and Lowe did not testify that it was a strategic decision to not impeach Ms. Jacquez with her statement. We disagree with both contentions.

¶ 35 Slinkard testified that she did not recall why she would not have used the statement at trial and did not remember why she would not have asked Ms. Jacquez about hiding the bat on cross-examination. But she also testified that she would have known at the time how she decided whether to impeach a witness on a particular factual issue, that she conducted Ms. Jacquez's cross-examination like she did in other cases, and that she believed she had adequately impeached Ms. Jacquez.

¶ 36    And while Lowe testified that Ms. Jacquez's statement about hiding the bat "would so obviously have been something that would come in at trial that I can't imagine that it was a conscious choice or strategic choice not to" elicit it, the district court credited Slinkard's testimony about how she chose to do her cross-examinations in other cases and that she did the same with her cross-examination of Ms. Jacquez, as well as Lowe's subsequent testimony that he would have said something to Slinkard had she missed an important cross-examination topic.

¶ 37    The district court's findings have record support, and as such we will not disturb them.  *See Dunlap*, 173 P.3d at 1061-62; *see also Vicente-Sontay*, ¶ 15.

¶ 38    Moreover, although counsel did not specifically testify that it was a strategic decision to not impeach Ms. Jacquez with Ms. Jacquez's statement about hiding or covering up the bat, as noted, Slinkard testified how she typically conducted cross-examination and that she did that in this case, and as such the presumption that her cross-examination was sound trial strategy is not overcome.  *See also People v. Moody*, 676 P.2d 691, 696 (Colo. 1984) (concluding that testimony by defendant's trial counsel, who

14

had no specific recollection of meeting with defendant prior to his preliminary hearing, that it was his practice to do so when representing defendants and that he had no recollection of not following such practice with defendant was sufficient to support finding that defendant had not met his burden of showing ineffective representation).

¶ 39    Thus, Ashby failed to show trial counsels' performance was deficient.

### c.    Substantive Evidence

¶ 40    Ashby contends that Ms. Jacquez's statement about hiding or covering the bat could have been introduced through Sergeant Fraker, Captain Bethel, and Chief Gallegos as substantive evidence pursuant to section 16-10-201, C.R.S. 2024.[3]  Again, we disagree.

¶ 41    Ashby did not make this argument in his Crim P. 35(c) motion but did make it in closing argument at the Crim. P. 35(c) hearing with respect to Sergeant Fraker and Captain Bethel.  To the extent

---

[3] Ashby contends, for the first time, in his reply brief that Ms. Jacquez's statement about hiding or covering the bat could have come in through the audio recording.  This argument is not properly before us, and we decline to address it.  *See People v. Cline*, 2022 COA 135, ¶ 75 n.3.

that his argument pertains to Chief Gallegos on appeal, it is unpreserved, and we decline to address it. *See People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996) ("Allegations not raised in a Crim.P. 35(c) motion or during the hearing on that motion and thus not ruled on by the trial court are not properly before this court for review.").

¶ 42     As to Sergeant Fraker, counsel asked him at trial whether Ms. Jacquez told Captain Bethel that she hid the bat, an objection was lodged, and the trial court sustained the hearsay objection. Thus, because counsel did exactly what Ashby complains they did not do, Ashby has not demonstrated that their performance was deficient.

¶ 43     Moreover, with respect to both Captain Bethel and Sergeant Fraker, Ashby points to no testimony from the Crim. P. 35(c) hearing demonstrating that failing to introduce the statements was unsound trial strategy or that Slinkard misunderstood the law. *Cf. Gandiaga*, 70 P.3d at 527 (concluding that defendant failed to carry his burden of proof with respect to the claim where defendant produced no admissible evidence to the contrary). Ashby merely points to Slinkard's answers to questions about how to impeach a witness with a prior inconsistent statement — not about her

16

understanding of introducing Ms. Jacquez's statement as substantive evidence.

¶ 44    Thus, although the district court did not make findings with respect to this argument, there is no evidence in the record to support Ashby's contention. *See People v. Washington*, 2014 COA 41, ¶ 1.

¶ 45    Finally, we reject Ashby's apparent contention that the district court unreasonably relied on Slinkard's testimony. Specifically, Ashby appears to argue that the court should have placed no weight on Slinkard's testimony that she did not want to aggressively cross-examine Ms. Jacquez and that she felt Ms. Jacquez's credibility had been sufficiently impeached on cross-examination. Slinkard impeached Ms. Jacquez through other direct evidence — specifically, photographs of the bat partially covered by a blanket contradicted Ms. Jacquez's testimony that she simply threw an unknown object (later determined to be the bat) into the bedroom. And at the Crim. P. 35(c) hearing Slinkard testified that the fact that the bat was covered by a blanket on the bed was the same as the word "hid." Thus, Ashby has not demonstrated that defense counsels' performance was deficient.

17

## B.    Failure to Correct Allegedly False Testimony

¶ 46    Ashby also contends that the district court erred by denying his claim that the prosecution violated his due process rights by allowing Ms. Jacquez to testify that she did not know how the bat got onto the bed and by failing to correct such testimony.  We discern no error.

¶ 47    When a prosecutor knowingly obtains a conviction using testimony they should have known was false, even if the testimony goes only to the credibility of the witness, it violates the defendant's due process rights.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972).  To receive a new trial, a defendant must show that (1) "the prosecution's case included perjured testimony"; (2) "the prosecution knew or should have known of the perjury"; and (3) "the perjury was material." *People v. Medina*, 260 P.3d 42, 48 (Colo. App. 2010).  Mere inconsistencies in a witness's story are insufficient to show that testimony was perjured.  *Gallegos v. People,* 179 P.2d 272, 273-74 (Colo. 1947) ("The mere fact that sworn testimony may differ from extrajudicial statements does not constitute perjury."); *People v. Valera-Castillo,* 2021 COA 91, ¶ 44.

¶ 48    The district court found that Ms. Jacquez made inconsistent statements and that the People did not have independent knowledge about what actually happened, concluding that no due process violation occurred.

¶ 49    Ashby contends that Ms. Jacquez admitted to hiding the bat but then at trial claimed otherwise.  But we agree with the People that the district court did not clearly err because Ashby has not shown that the prosecution's case included perjured testimony.  Although, Ms. Jacquez made inconsistent statements about what she did with the bat, "a mere inconsistency in a witness's story is insufficient to support the conclusion that the testimony was perjured or that the prosecutor knowingly offered false testimony." *Valera-Castillo*, ¶¶ 44, 46.  Thus, to the extent that Ms. Jacquez's trial testimony was inconsistent with her prior statement, this fact alone is not enough to demonstrate that her trial testimony was false.  Indeed, it was a credibility determination to be made by the jury if they believed Ms. Jacquez's trial testimony that she threw an object (that she later found out to be the bat) that ended up on the bed partially covered by a blanket without anyone going into the bedroom.  *See Medina*, 260 P.3d at 48; *People v. Clark*, 2015 COA

44, ¶ 175. Accordingly, the district court did not err by concluding that the prosecution did not violate Ashby's due process rights.

## IV. Disposition

¶ 50    The order is affirmed.

JUDGE PAWAR and JUDGE SCHUTZ concur.