The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
August 29, 2019

**2019COA133**

**No. 18CA0264, *People v. Sharp* — Criminal Procedure — New
Trial — Postconviction Remedies — New Trial Based on Newly
Discovered Evidence; Attorneys and Clients — Ineffective
Assistance of Counsel**

A division of the court of appeals holds that a defendant

asserting a claim for ineffective assistance of counsel under Crim. P.

35(c) based on counsel's failure to file a motion for a new trial must

prove prejudice resulting from the failure. This means the

defendant must prove that the trial court would have granted the

motion.

COLORADO COURT OF APPEALS **2019COA133**

Court of Appeals No. 18CA0264
Adams County District Court No. 11CR1307
Honorable Ted C. Tow, Judge

The People of the State of Colorado,

Plaintiff-Appellant,

v.

Harley David Sharp,

Defendant-Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE J. JONES
Román and Rothenberg*, JJ., concur

Announced August 29, 2019

Dave Young, District Attorney, Michael Whitney, Deputy District Attorney,
Brighton, Colorado, for Plaintiff-Appellant

Mallika L. Magner, Alternate Defense Counsel, Crested Butte, Colorado, for
Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1    The People appeal the postconviction court's order granting the Crim. P. 35(c)(2) motion of defendant, Harley David Sharp, and ordering a new trial.  We reverse and remand with instructions to reinstate the judgment of conviction and the sentence imposed.  We first conclude that defendant didn't establish prejudice resulting from his trial attorney's failure to investigate.  And we conclude that to establish ineffective assistance of trial counsel where counsel failed to move for a new trial, a defendant must demonstrate a reasonable probability that the court would have granted the motion.  Prejudice can't be presumed in this situation, and in this case, defendant didn't establish a reasonable probability that a motion for a new trial would have been granted.

## I.    Background

¶ 2    The People charged defendant with sexually assaulting his daughter between 2008 and 2010 when she was between two and five years old.  The victim's great aunt had reported the assaults to the department of social services after the victim confided in her and spontaneously engaged in aggressive sexual behavior in late 2010.

¶ 3     At trial, the victim struggled to remember details.  But she testified that her father had touched her buttocks, touched and licked her vagina, and had her touch his penis.  The victim's mother testified that one night she woke up and saw defendant touching the victim's vagina while also touching himself.  She told defendant to stop, but she didn't report the incident.[1]  A sexual assault nurse examiner (SANE) who examined the victim shortly after the victim's great aunt reported the assaults testified that she didn't find any physical trauma.  But according to the SANE, that was a fairly typical result for the type of contact the victim and her mother accused defendant of engaging in.  (The SANE had been told the victim hadn't had any contact with her father for at least two months.)  She also said that only about four percent of the children she has examined for evidence of sexual assault showed any physical trauma.

---

[1] At the time of trial, the victim's mother had pleaded guilty to sexual assault and attempted sexual assault relating to the same conduct with which defendant was charged, and was serving a seven-year prison sentence.

¶ 4    A jury found defendant guilty of sexual assault on a child, sexual assault on a child as a pattern of abuse, and sexual assault on a child by one in a position of trust.

¶ 5    At defendant's sentencing hearing, R.H., a cousin of the victim's mother, spoke with defense counsel's investigator and made some new allegations. R.H. said that the victim had asked her "what would happen if I lied?" — a statement R.H. assumed meant the victim was lying about her father assaulting her. R.H. also told the investigator that, in 2010, the victim's grandmother had offered to pay R.H. to make false allegations of sexual assault against the grandmother's husband (or ex-husband) to get "revenge" against him for refusing to pay rent to her. Defense counsel didn't move for a new trial based on R.H.'s allegations.

¶ 6    A division of this court affirmed defendant's convictions on direct appeal. *People v. Sharp*, (Colo. App. No. 13CA1761, June 11, 2015) (not published pursuant to C.A.R. 35(f)).

¶ 7    Defendant filed a pro se motion (followed shortly thereafter by a supplemental motion from newly appointed postconviction defense counsel) for postconviction relief under Crim. P. 35(c). He sought a new trial based on newly discovered evidence (*see* Crim. P.

35(c)(2)(V)) — specifically, the information R.H. had given the investigator — and alleged that his trial counsel had been ineffective in a variety of ways (*see* Crim. P. 35(c)(2)(I)). As now relevant, defendant alleged that his trial counsel provided ineffective assistance by failing to investigate potential witnesses (one of whom was R.H.) and by failing to move for a new trial under Crim. P. 33 after R.H. came forward with new information.

¶ 8    The postconviction court held an evidentiary hearing on the motion. Defendant testified that in late 2007 or early 2008, the grandmother picked up the victim from the babysitter and took her home to defendant. The grandmother told him that she had seen inflammation and green discharge on the victim's vaginal area after picking her up. He said that he "flipped" and took the victim to the hospital, where a doctor examined her and didn't find any inflammation or green discharge. He said he told trial counsel about the incident before trial, but counsel failed to investigate further or to seek information from the hospital where the victim had been examined. R.H. testified about her conversations with the victim, the grandmother, and the defense investigator.

¶ 9    The postconviction court rejected many of defendant's claims, but found merit in two.  First, it found trial counsel's failure to investigate defendant's assertion that he had taken the victim to a hospital to be examined during the same period he was allegedly assaulting her was ineffective assistance that prejudiced defendant. On this basis, the court vacated defendant's convictions and ordered a new trial.  Second, it found that trial counsel's failure to move for a new trial after R.H. came forward was ineffective assistance.  The court said it did not need to determine whether such a motion would have been successful, reasoning that the failure to move for a new trial is like a failure to perfect an appeal, a circumstance in which the loss of the appellate proceeding constitutes the required prejudice.  So the remedy for a failure to move for a new trial, the court said, would be to restore defendant's opportunity to seek a new trial.[2]

---

[2] The court addressed this issue only as a backstop in case this court disagreed with its conclusion on the prior hospital visit issue. There would be no point in allowing defendant to move for a new trial if this court were to affirm the postconviction court's ruling granting a new trial.

II.     Discussion

¶ 10     The People challenge both of the postconviction court's bases for finding ineffective assistance of counsel. We agree with them as to both.

A.     Applicable Law and Standard of Review

¶ 11     To prevail on a claim of ineffective assistance of counsel under Rule 35(c), a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). There is a strong presumption that counsel's performance did not fall below an objective standard of reasonableness. *Id.* at 689. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *accord Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003) ("[A] reasonable probability means a probability sufficient to undermine confidence in the outcome.").

¶ 12     A postconviction court's ruling on a Rule 35(c) motion presents a mixed question of fact and law. *Dunlap v. People,* 173 P.3d 1054, 1063 (Colo. 2007). We defer to the court's findings of fact if they

6

have record support, but we review any legal conclusions de novo. *Id.* These legal conclusions to which we do not defer include "the ultimate determinations on *Strickland*'s performance and prejudice prongs." *People v. Sifuentes*, 2017 COA 48M, ¶ 16; *see People v. Newmiller*, 2014 COA 84, ¶ 18.

### B. Analysis

#### 1. Failure to Investigate

¶ 13    The postconviction court found that trial counsel's failure to further investigate the 2007 or 2008 hospital visit met both *Strickland* prongs: (1) it fell below the objective standard of reasonableness and (2) "[t]his information, if true, may very well have had some impact on the jury's consideration of the facts." This is so, the court said, because this evidence would have shown "that during the same time period Defendant was alleged to have been perpetrating upon this child, the child was examined by a doctor, who had found no signs of physical abuse." The court concluded that "while it is entirely possible that a jury will still convict Defendant, the Court finds that the confidence in the verdict is sufficiently undermined[.]"

7

¶ 14    We don't address the postconviction court's finding of ineffective assistance because we disagree with its ultimate determination of prejudice. *See Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."); *People v. Villanueva*, 2016 COA 70, ¶ 66 ("If a court determines that a defendant has failed to prove either prong of the *Strickland* analysis, it may deny an ineffective assistance claim without addressing the other prong.").

¶ 15    To show prejudice, defendant had to show a reasonable probability that the result of the trial would have been different had defense counsel investigated the hospital visit and introduced related evidence at trial. *See Villanueva*, ¶ 67 (A defendant "must do more than simply allege that other evidence could have aided his defense; he must identify the evidence and demonstrate that it would have advanced his defense."); *People v. Pendleton*, 2015 COA 154, ¶ 34 ("[T]he mere possibility that additional investigation would have revealed useful information does not establish ineffective assistance.").

¶ 16     We conclude that, for the following reasons, defendant failed to meet his burden:

- The SANE who examined the victim in early 2011 testified that only four percent of over 600 children whom she had examined for sexual assault showed signs of irritation or trauma. She explained that children heal "really quickly" and often the abuse is "gentle." Defense counsel didn't challenge any of that testimony (and defendant doesn't contend he should have).

- The People didn't allege that defendant had committed any acts of penetration or any other forceful acts one might expect to cause physical trauma.[3]

- The first examination of the victim allegedly occurred in late 2007 or early 2008. There was therefore only a small overlap, if any, between the time of that examination and the period covering the charges

---

[3] The People argued and presented evidence of only nonforceful touching and licking. The jury made specific findings as to the particular acts defendant had committed. All involved "touching" or "licking" either the victim's or defendant's genitals.

9

(January 1, 2008, to December 10, 2010). Indeed, the evidence strongly points to defendant having committed the charged acts in 2010, two or more years after the first examination. The victim testified that she was six years old when defendant touched her. (She actually didn't turn six until July 5, 2011.) Her mother testified that she saw one of the incidents in the summer of 2010. (She claimed to have seen only that one incident.) Defendant testified that he was separated from the victim's mother from July 2008 to August 2010, he was homeless during much of that time, the victim lived with her mother during that time, and he had very little contact with the victim during that time. And the victim told her great aunt about defendant's acts in late 2010, about the same time the great aunt noticed the victim exhibiting inappropriate sexual behavior.

- This wasn't a typical child sex assault case, where the only evidence is the child victim's testimony. As noted, the victim's mother testified that she once saw

defendant touching the victim while the victim's pants were down. And the mother had pleaded guilty to a sexual offense against the victim arising from that incident.

¶ 17 In light of all this, we conclude that the potential evidence of the first examination would have had only minimal relevance, and virtually no exculpatory value. The nature of the charged conduct (supported by both the victim's and her mother's testimony) and the SANE's testimony were entirely consistent with any finding of no physical trauma.

¶ 18 Though defendant argues that taking his daughter to a hospital for a sexual assault examination isn't the conduct of one who has sexually assaulted his daughter, and therefore evidence of that event would have negatively impacted the victim's and her mother's credibility, he overstates the point. After all, there was a potential gap of more than two years between the first examination and the acts with which he was charged.

¶ 19 Defendant's argument that the evidence would have undermined the grandmother's credibility fares no better.

¶ 20    According to defendant's testimony at the postconviction hearing, it was the grandmother who told defendant the victim may have been sexually assaulted by a babysitter, which prompted him to take the victim to the hospital in late 2007 or early 2008.  So, defendant says, had the jury learned that the grandmother had accused someone else of sexually assaulting the victim, it might have viewed her less credibly.  But the grandmother's credibility wasn't an issue at trial.  She didn't testify, and no one testified that the grandmother had ever accused defendant of sexually assaulting the victim.[4]  The only things mentioned about the grandmother were that she sometimes babysat the victim and had spoken to the victim about defendant *after* the police arrested defendant.[5]

¶ 21    In sum, defense counsel's failure to investigate the 2007 or 2008 examination doesn't undermine our confidence in the

---

[4] The grandmother didn't testify because defense counsel successfully argued she shouldn't be allowed to do so because her presence during the victim's testimony violated the court's sequestration order.  Defendant has never asserted that his counsel provided ineffective assistance in making that request.

[5] The victim testified that her grandmother talked to her (after she had come forward) about getting her father help and had told her to "just say the truth."

outcome of the trial. The postconviction court therefore erred in setting aside defendant's convictions and ordering a new trial.

## 2. Failure to Move for a New Trial

¶ 22 Though we reverse the postconviction court's decision to set aside defendant's convictions, we also must address its finding that counsel provided ineffective assistance by failing to move for a new trial. This is so because the postconviction court ordered that defendant be allowed to file a motion for a new trial in the event we reversed its decision to vacate the convictions. Such a motion could conceivably result in a new trial. Functionally, therefore, the postconviction court's ruling on the failure to move for a new trial could have the same effect as a ruling setting aside the convictions. We conclude that the postconviction court erred in granting defendant relief on this claim.

¶ 23 The postconviction court concluded that counsel provided ineffective assistance by failing to move for a new trial after R.H. came forward at the sentencing hearing. The court reasoned that R.H.'s assertion that the grandmother had offered to pay R.H. to falsely accuse the grandmother's husband to get revenge against her husband and R.H.'s assertion that the victim had said "what

13

would happen if I lied?" were "potentially exculpatory." That information, the court said, could have affected the jury's assessment of the victim's credibility and supported "the *possible* defense that [the grandmother] planted the allegations with the [victim]." (Emphasis added.) So, the court concluded, trial counsel provided ineffective assistance by failing to file a motion for a new trial based on this "newly discovered" evidence.

¶ 24 But the court didn't find that this evidence met the test for granting a new trial based on newly discovered evidence. Indeed, the court said it didn't need to "determine whether a new trial would have been granted." Instead, citing *People v. Long*, 126 P.3d 284, 286 (Colo. App. 2005), the court determined that, like the forfeiture of an appeal, "the loss of the ability to present an argument for a new trial is sufficient prejudice under *Strickland*."

¶ 25 The postconviction court erred in relieving defendant of the obligation to show *Strickland* prejudice. And because defendant didn't establish that the new evidence met the requirements for granting a new trial, the postconviction court erred in granting defendant relief on this claim.

14

### a. Defendant Was Required to Show *Strickland* Prejudice

¶ 26    To reiterate, *Strickland* generally requires a showing that the defendant was prejudiced — that is, that there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance.  *Strickland,* 466 U.S. at 687-88, 694.  Such proof of actual prejudice is necessary because of the "strong presumption of reliability" attached to the judgment.  *Id.* at 696; *see Smith v. Robbins,* 528 U.S. 259, 286 (2000); *People v. Valdez,* 178 P.3d 1269, 1278 (Colo. App. 2007).

¶ 27    Only in very limited circumstances is prejudice presumed.  A complete denial of counsel falls in this category, *United States v. Cronic,* 466 U.S. 648, 658-59 (1984), as does a complete failure to subject the prosecution's case to meaningful adversarial testing, *id.* at 659, and a situation in which even fully competent counsel couldn't provide effective assistance, *id.* at 659-60.

¶ 28    More specifically relevant to this case, so does counsel's failure to perfect a defendant's desired appeal.  *Roe v. Flores-Ortega,* 528 U.S. 470, 483-84 (2000); *Long,* 126 P.3d at 286-87.  In such a case, the deficiency "deprive[s] [the defendant] of the appellate proceeding altogether."  *Roe,* 528 U.S. at 483; *accord Long,* 126 P.3d at 286;

15

*see also Roe*, 528 U.S. at 483 (comparing the complete denial of counsel, for which prejudice need not be shown, to "[t]he even more serious denial of the entire judicial proceeding itself, . . . to which [the defendant] had a right").  The upshot is that unlike a case where the defendant claims his counsel provided ineffective assistance during the appeal, for which the defendant must show that he would have prevailed on appeal but for the deficient performance, *Robbins*, 528 U.S. at 285 (unreasonable failure to file a merits brief on appeal required showing of actual prejudice); *Long*, 126 P.3d at 286, in the circumstance where counsel fails to appeal in contravention of a defendant's wishes, no such showing is required.

¶ 29    In *Valdez*, a division of this court extended this principle to a case in which postconviction counsel failed to timely pursue a motion under Crim. P. 35(c) as requested by the defendant, resulting in the postconviction court deeming the motion barred by the doctrine of laches.  178 P.3d at 1273-75.  In reversing, the division concluded that because counsel's ineffectiveness had caused the defendant to be denied "the judicial proceeding he

sought" — the Rule 35(c) proceeding — the defendant didn't have to show *Strickland* prejudice. *Id.* at 1278-80.

¶ 30     Our takeaways from this line of authority are (1) absent one of the situations identified in *Cronic*, a defendant must show actual prejudice unless counsel's ineffectiveness caused the forfeiture of a "proceeding" in its entirety; and (2) a "proceeding" in this context means the whole of a discrete phase of a criminal prosecution. In Colorado, these discrete phases include (1) a trial proceeding, from the commencement of the case to the resolution of all allowed post-judgment, pre-appeal motions in the trial court; (2) an appellate proceeding, including at least a defendant's appeal as a matter of right to this court;[6] and (3) a postconviction proceeding under Rule 35(c).

¶ 31     With these principles in mind, we hold that counsel's failure in this case to file a motion for a new trial didn't result in the forfeiture of an entire proceeding but was, at most, ineffective assistance in

---

[6] We need not decide whether supreme court review, to which, with the exception of capital cases, a defendant has no right, constitutes a separate proceeding. We observe, however, that in *People v. Valdez*, 789 P.2d 406, 410-11 (Colo. 1990), the supreme court held that a defendant who claimed that his counsel should have filed a petition for a writ of certiorari after an adverse decision by the court of appeals was required to show prejudice.

the course of a trial proceeding. And just as a defendant must show actual prejudice as a result of deficient performance in the course of an appellate proceeding, *see Robbins*, 528 U.S. at 285; *People v. Valdez*, 789 P.2d 406, 409-10 (Colo. 1990), or in the course of a Rule 35(c) proceeding, *see People v. Fitzgerald*, 973 P.2d 708, 712-13 (Colo. App. 1998) (court properly denied postconviction relief where the defendant failed to show any prejudice caused by the previous postconviction counsel's actions), a defendant is required to show prejudice as a result of counsel's deficient performance in the course of a trial proceeding, *see Bell v. Cone*, 535 U.S. 685, 695-98 (2002) (where counsel didn't entirely fail to subject the prosecution's case to meaningful adversarial testing, but merely failed to do so at specific points — by failing to adduce mitigating evidence and failing to make a closing argument — prejudice would not be presumed).

¶ 32    Consider the analogous circumstance of counsel failing to move to suppress evidence. Such a motion, like a motion for a new trial, is filed within a proceeding. And granting a motion to suppress may result in the dismissal of charges. Yet, the Supreme Court has held that a defendant seeking postconviction relief based

18

on counsel's failure to file such a motion must demonstrate actual *Strickland* prejudice by proving that the motion would have been granted. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("[T]he defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence . . . ."); *accord People v. Terry*, 2019 COA 9, ¶ 31; *People v. Vicente-Sontay*, 2014 COA 175, ¶ 23.

¶ 33 Consider as well the equally analogous circumstance of counsel failing to move for a judgment of acquittal. In that circumstance, a defendant must also show *Strickland* prejudice. *See, e.g.*, *Rivera-Rivera v. United States*, 827 F.3d 184, 188 (1st Cir. 2016) (a defendant must satisfy the prejudice prong when seeking relief for ineffective assistance of counsel based on counsel's failure to move for acquittal); *Commonwealth v. Hanible*, 30 A.3d 426, 442-43 (Pa. 2011) (the defendant's ineffectiveness claim failed where he did not demonstrate "a reasonable probability that the trial court would have granted a motion for judgment on [sic] acquittal").

¶ 34 We don't see any principled difference in this context between failing to file a motion to suppress or failing to move for a judgment

of acquittal and failing to file a motion for a new trial. As we see it, all such failures are failures within a proceeding, not failures that deprive a defendant of "an entire judicial proceeding."

¶ 35     Rule 35(c) itself also supports our conclusion. Subsection (c)(2)(V) says that a defendant may seek postconviction relief if

> there exists evidence of material facts, not theretofore presented and heard, which, by the exercise of reasonable diligence, could not have been known to or learned by the defendant or his attorney prior to the submission of the issues to the court or jury, and which requires vacation of the conviction or sentence in the interest of justice.

In other words, a defendant may obtain postconviction relief under Rule 35(c)(2)(V) based on newly discovered evidence only by making essentially the same showing required to succeed on a Crim. P. 33 post-trial motion for a new trial based on newly discovered evidence. *See People v. Gutierrez*, 622 P.2d 547, 559-60 (Colo. 1981) (setting forth a defendant's burden on a Rule 33 motion for a new trial based on newly discovered evidence); *People v. Gee*, 2015 COA 151, ¶ 73 (same); *People v. Muniz*, 928 P.2d 1352, 1357 (Colo. App. 1996) (holding that the same elements apply to a claim under Rule 35(c)(2)(V)). A defendant may not avoid that burden simply by

20

repackaging his newly discovered evidence claim as one for ineffective assistance of counsel.

¶ 36 As noted, the only case the postconviction court cited in support of its conclusion was *Long*. *Long*, however, involved the forfeiture of the entire appellate proceeding. Defendant doesn't cite any case, and we haven't found one, in Colorado or elsewhere, indicating that losing the opportunity to move for a new trial is a forfeiture of an entire judicial proceeding such that a showing of *Strickland* prejudice isn't required. On the contrary, numerous cases hold that a showing of *Strickland* prejudice is required in this context. *See, e.g.*, *United States v. Higgs*, 663 F.3d 726, 742-43 (4th Cir. 2011) (a defendant must show a likelihood of prevailing on a motion for a new trial to establish prejudice based on counsel's failure to file such a motion); *Wilson v. Henry*, 185 F.3d 986, 991 (9th Cir. 1999) ("[B]ecause the motion [for a new trial] almost certainly would have failed, [the defendant] has not demonstrated that he was prejudiced by counsel's refusal to make it."); *Manley v. State*, 605 So. 2d 1327, 1328 (Fla. Dist. Ct. App. 1992) (there is no per se entitlement to relief when counsel fails to file a timely motion for a new trial); *State v. C.D.L.*, 250 P.3d 69, 80-81 (Utah Ct. App.

21

2011) (the defendant failed to show prejudice from counsel's failure to move for a new trial because he couldn't show that he was entitled to a new trial).[7]  For the reasons discussed above, we find these authorities persuasive.

### b.  Defendant Failed to Show *Strickland* Prejudice

¶ 37      To show that a motion for a new trial would have succeeded, defendant had to show at the postconviction hearing that (1) the evidence — R.H.'s testimony about what the victim and the

---

[7] *See also, e.g., Ingram v. Sec'y, Fla. Dep't of Corr.*, 736 F. App'x 798, 801 (11th Cir. 2018) (no deficient performance or prejudice where the defendant can't show he would have been entitled to a new trial if his counsel had filed a motion); *Weaver v. United States*, 793 F.3d 857, 864-65 (8th Cir. 2015) (the defendant wasn't prejudiced by counsel's failure to move for a new trial when evidence wasn't newly discovered); *Diaz v. United States*, 298 F. App'x 858, 859-61 (11th Cir. 2008) (newly discovered impeachment evidence was insufficient to justify a new trial, so the defendant failed to show that there was a reasonable probability of a different result had her counsel filed a motion for a new trial); *Jewson v. Crosby*, No. 3:04CV71/MCR/MD, 2005 WL 1684209, at *7-8 (N.D. Fla. Mar. 11, 2005) (unpublished report and recommendation) (declining the defendant's request to presume prejudice where counsel failed to move for a new trial; loss of an evidentiary hearing on a motion for a new trial is not a forfeiture of an entire judicial proceeding), *adopted as modified*, 2005 WL 1692617 (N.D. Fla. June 16, 2005) (unpublished opinion), *aff'd*, 174 F. App'x 529 (11th Cir. 2006); *State v. Batek*, 638 S.W.2d 809, 812 (Mo. Ct. App. 1982) ("The fact of untimely filing [for a motion for new trial], by itself, does not compel reversal; it is also essential that the defendant show some error by the trial court which could have resulted in a successful appeal, had the motion been filed on time.").

grandmother had said to her — was discovered after trial; (2) he and his attorney were diligent in attempting to uncover it before trial; (3) the evidence would have been material and not merely cumulative or impeaching; and (4) the evidence probably would have resulted in an acquittal if presented at trial. *Gutierrez*, 622 P.2d at 559; *see* Crim. P. 35(c)(2)(V). He failed to meet that burden.

¶ 38 Initially, we reject defendant's argument that the postconviction court "implicitly" found all of these factors save whether he could have discovered the evidence through the exercise of reasonable diligence before trial. The court specifically said that it need not determine whether a motion would have been successful, and its order doesn't include an express finding on any of the required elements. Nor, contrary to defendant's assertion, does the record of the postconviction hearing establish all of the required elements.

¶ 39 First of all, defendant knew of R.H. before trial. Though he testified that he told his attorney about R.H. before trial, the postconviction court found him not credible on that point. Defendant's failure to tell his attorney of a potential defense witness of which he was aware is, by itself, enough to defeat any newly

23

discovered evidence claim. *Cf. People v. Gallegos*, 187 Colo. 6, 10, 528 P.2d 229, 231 (1974) ("Clearly, evidence within the defendant's knowledge before trial does not constitute newly discovered evidence.").

¶ 40    Second, the evidence that the victim asked R.H. "what would happen if I lied" may have been of some impeachment value, but not enough to be of "consequence to the outcome." *Farrar v. People*, 208 P.3d 702, 707 (Colo. 2009) (The evidence "must be of sufficient consequence for reasons other than its ability to impeach, or cast doubt upon, the evidence already presented at trial. It must be consequential in the sense of being affirmatively probative of the defendant's innocence, whether that is accomplished by helping to demonstrate that someone else probably committed the crime; that the defendant probably could not have committed the crime; or even that the crime was probably not committed at all.") (citations omitted).

¶ 41    To the contrary, when R.H.'s testimony is read in context, it is more likely that the victim (if she said this at all) was wondering whether she should lie by saying defendant *hadn't* assaulted her. On this issue, R.H. testified in full as follows:

And on the drive home one day we were talking about her dad. And the conversation got brought up that he was going to be going away to get some help. And I asked [the victim] — I said, well, why do you think your daddy needs help. And she said well because he did bad things to me. And I said are you sure. What kind of things did he do to you. And she said, well, just bad things, I don't know, just bad things. And so then the conversation went on and at the end of the conversation she said, well, what would happen if I lied.

R.H. questioned the victim's stated desire to get "help" for her father and whether the victim was sure her father had done "bad things" to her. This could have been perceived by the victim as pressure not to testify against her father. All in all, the exchange was ambiguous.

¶ 42 Defendant doesn't explain how R.H.'s testimony about the grandmother's offer to pay R.H. to lie about having been assaulted by the grandmother's husband would have been admissible. Because the grandmother didn't testify, and because the grandmother's statements to R.H. would have been offered for their truth, R.H.'s statements would have been inadmissible hearsay at trial. *See* CRE 801, 802. And because there was no evidence of any discussion between the victim and her grandmother about

defendant's touching of the victim (or anything else) before the victim's outcry, any assertion that the grandmother's effort to enlist R.H. in a scheme to falsely accuse the grandmother's husband raised the possibility that the grandmother had similarly attempted to influence the victim would have been utter speculation. It therefore wouldn't have been relevant even if it wasn't inadmissible hearsay. *See* CRE 401, 402 (irrelevant evidence is inadmissible).

¶ 43    In sum, we conclude that there isn't a reasonable probability that defendant would have been granted a new trial had counsel brought the motion. It follows that defendant isn't entitled to move for a new trial.

### III.    Conclusion

¶ 44    We reverse the order and remand the case to the district court to reinstate defendant's judgment of conviction and sentence.

JUDGE ROMÁN and JUDGE ROTHENBERG concur.

26