22CA2112 Peo v Fleeks 06-12-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA2112
Adams County District Court No. 16CR1046
Honorable Patrick H. Pugh, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

A'Jueal Fleeks,

Defendant-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE SCHUTZ
Fox and Harris, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 12, 2025

---

Philip J. Weiser, Attorney General, Patrick A. Withers, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Patrick R. Henson, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1 Defendant, A'Jueal[1] Fleeks, appeals the postconviction court's order denying his Crim P. 35(c) motion. We affirm the order.

## I. Background and Procedural History

### A. Incident, Trial, and Conviction

¶ 2 To assist the reader in understanding the relationships between the individuals involved in this matter, we include the following table:

| Name | Relationship to Others |
|---|---|
| Raymond Marquez | Stormee Duran's former boyfriend, and Bissell's former roommate |
| Stormee Duran | Fleeks's romantic interest at the time of the incident and potential alibi witness<br><br>Marquez's on-again-off again romantic partner and coparent |
| Ian Bissell | Marquez's former roommate<br><br>Fleeks's burglary victim |
| Leslie Blea | Bissell's romantic partner<br><br>Fleeks's burglary victim |

---

[1] The appellate briefs stylize Fleeks's first name as, "Ajueal," but in his written correspondence, his name is stylized as, "A'Jueal," so we defer to his written preference.

¶ 3    Fleeks's conviction is supported by the following evidence presented at trial:

¶ 4    On March 5, 2016, at around 2 a.m., Fleeks, armed with a handgun, showed up at Bissell's and Blea's residence looking for Bissell's former roommate, Marquez. Neither Blea nor Bissell had met Fleeks before this incident. Bissell and Blea told Fleeks that Marquez no longer lived there, but Fleeks forced his way into the residence holding Bissell and Blea at gunpoint.

¶ 5    Fleeks proceeded to search the home. When he arrived at a bedroom, Blea told him not to enter because her child was the only person in there. Fleeks ignored her, opened the bedroom door and turned on the light, at which point Blea ran into the bedroom and laid on top of the child to protect him. Blea stared at Fleeks's face in the light, while shielding her child.

¶ 6    Fleeks left the bedroom and argued with Bissell in the living room. Blea could still hear and observe what was happening. The argument escalated and Fleeks repeatedly punched Bissell in the head. Bissell offered to call Marquez to assuage Fleeks.

¶ 7    Bissell located Marquez's phone number. Fleeks called Marquez and had a seven-to-ten-minute conversation in which he

referred to himself as "Dolla[2]" and stated, "I heard you're going to my girl's school . . . you keep fucking with my girl."  After the conversation, Fleeks left their home.

¶ 8      Police arrived on scene shortly thereafter.  Blea provided the officers with a general description of Fleeks including that he wore a red hat with a white "W" on it.

¶ 9      Later that same day, Blea, Bissell, and Marquez had a conversation about the burglary, from which Blea learned that Fleeks's "girl" was Duran.  After the conversation, Blea reviewed Marquez's social media contacts and located Duran's social media account.  While reviewing Duran's account, Blea observed Fleeks wearing the same hat that he wore during the burglary.  After reviewing Duran's account, Blea contacted a detective and told him that she recognized Fleeks.  Detectives then looked at the profile picture and matched it to the description that Blea had provided to law enforcement, as summarized in the initial police report.

¶ 10     Police soon arrested Fleeks, and Blea later identified Fleeks in a photo lineup.  The prosecution charged Fleeks with eight counts,

---

[2] Some portions of the record spell the alleged nickname as "Dollar."

including burglary, menacing, criminal trespass, possession of a weapon by a previous offender, third degree assault, and child abuse.

¶ 11     After Fleeks's arrest, Duran approached trial counsel and told them that she could provide an alibi for Fleeks's whereabouts on the night of the burglary.  Trial counsel endorsed Duran as a witness, but did not call her to testify and did not request an alibi theory of the case instruction.

¶ 12     After a three-day trial, the jury convicted Fleeks on all counts except the child abuse charge.  The trial court sentenced him to concurrent prison sentences with a controlling term of fifteen years.

### B.     First Appeal and Rule 35(c) Hearing

¶ 13     Fleeks's private appellate counsel directly appealed the convictions and in 2018, a division of this court affirmed, but remanded the matter to the trial court to correct the mittimus.  *See People v. Fleeks*, (Colo. App. 17CA0241, Oct. 18, 2018) (not published pursuant to C.A.R. 35(e)) (*Fleeks I).*  The mandate issued in December 2018.  Appellate counsel took no subsequent actions in this case.

¶ 14    In March 2020, Fleeks, acting pro se, moved for postconviction relief under Crim P. 35(c) alleging that trial counsel and appellate counsel were ineffective.  In June, the postconviction court appointed Alternate Defense Counsel (ADC) to represent Fleeks after the public defender's office conflicted off the matter.  ADC supplemented Fleeks's motion.

¶ 15    Fleeks claimed that his trial counsel was ineffective by (1) failing to give notice of and present an alibi defense; (2) making certain promises — and assuming a burden of proof the defense could not satisfy — during opening statements; (3) allowing a recording of a jail phone call to be admitted in which Fleeks refers to himself as "Dolla" rather than stipulating that he used the nickname; and (4) failing to ask for an alibi theory of the case instruction.  Fleeks also claimed that, because of counsel's failures, he did not knowingly or voluntarily waive his right to testify.

¶ 16    Fleeks claimed his appellate counsel was ineffective by failing to advise him of his right to seek sentence reconsideration under Crim. P. 35(b) upon the issuance of the mandate in *Fleeks I*.  In April 2022, the postconviction court granted a hearing to determine whether trial counsel was ineffective for failing to preserve,

investigate, and present evidence of an alibi defense through Duran's testimony (the alibi defense). The court summarily denied Fleeks's other claims.

¶ 17     In September, the postconviction court held an evidentiary hearing at which it heard testimony from Duran. After considering the evidence presented, the court found that trial counsel acted below the applicable standard by failing to pursue the alibi defense.

¶ 18     However, the court also found that Fleeks's ineffective assistance of counsel claim ultimately failed because he did not prove the result of the trial would have been different even if the alibi defense had been presented. Thus, the court rejected the claim because Fleeks failed to demonstrate that prejudice resulted from trial counsel's deficient performance.

¶ 19     In support of its conclusion that Fleeks failed to demonstrate prejudice, the court noted that Duran's testimony at the Rule 35(c) hearing had some timeline inconsistencies, including that they ordered pizza around 11 p.m. but did not go to bed until around 4 a.m., which left a substantial gap of unaccounted for time. Additionally, Duran testified that Fleeks was hostile toward Marquez due to Marquez's alleged abusive conduct toward Duran.

The court reasoned that if Duran had been called to testify, this evidence may have been used to both impeach her testimony and to suggest that Fleeks had a motive for the burglary.

¶ 20 The court found that even if the alibi defense had been introduced, there was sufficient evidence from which the jury could have still convicted Fleeks, including:

- Blea's and Bissell's trial testimony that Fleeks committed the offense;

- Blea's general description of Fleeks's physical characteristics immediately after the crime;

- Blea's ability to identify Fleeks by the social media pictures in which he was wearing the same hat that was worn during the burglary;

- Blea's ability to identify Fleeks in a subsequent photo lineup; and

- Blea's knowledge of facts, such as referring to himself as Dolla, that she would not have known had the incident not occurred.

¶ 21 Based on these findings, the court found that Fleeks suffered no prejudice because there was still sufficient evidence for a

reasonable jury to conclude he was guilty of the subject offenses. The court therefore denied the claims predicated on the failure to present the alibi defense.

## II.     Issues On Appeal

### A.     Applicable Law

#### 1.     Standard of Review and Postconviction Relief Under Rule 35(c)

¶ 22     Summary denial of a Crim. P. 35 motion is "appropriate if the claims raise only an issue of law, or if the allegations, even if true, do not provide a basis for relief." *People v. McGlaughlin*, 2018 COA 114, ¶ 24 (quoting *People v. Venzor*, 121 P.3d 260, 262 (Colo. App. 2005)).  We review de novo a postconviction court's denial of a Crim. P. 35(c) motion without a hearing.  *Id.* at ¶ 25.

¶ 23     If a postconviction court enters an order addressing the merits of a Rule 35(c) claim after an evidentiary hearing, we review the findings for an abuse of discretion.  *People v. Huggins*, 2019 COA 116, ¶ 28.  A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or is based on an erroneous understanding or application of the law.  *Id.*

¶ 24     A claim of ineffective assistance of counsel presents a mixed question of fact and law.  *People v. Sharp*, 2019 COA 133, ¶ 12.  We

8

defer to the postconviction court's factual findings if they have record support, but we review any legal conclusions — including the court's determinations on *Strickland*'s performance and prejudice prongs — de novo. *Id.*

¶ 25 We may affirm the denial of a postconviction motion for any reason supported by the record, even if the rationale was not expressly relied on by the postconviction court. *See People v. Taylor*, 2018 COA 175, ¶ 8.

### 2. Sentence Reductions under Crim P. 35(b)

¶ 26 A defendant may seek a sentence reduction under Crim. P. 35(b) within eighteen weeks from the entry of "any order or judgment of the appellate court denying review or having the effect of upholding a judgment of conviction or sentence." Crim. P. 35(b). After considering the motion and any supporting documents, the court may summarily deny the motion or reduce the sentence. The decision whether to grant a Rule 35(b) motion is entrusted to the court's sound discretion. *People v. Dunlap*, 36 P.3d 778, 780 (Colo. 2001). In some circumstances, defense counsel's failure to pursue a Rule 35(b) motion *may* constitute ineffective assistance. *People v. Dunlap*, 124 P.3d 780, 798 (Colo. App. 2004) (emphasis added).

9

### 3. Ineffective Assistance of Counsel

¶ 27    To prevail on an ineffective assistance of counsel claim, a defendant must prove counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To establish defense counsel's deficient performance, a defendant must prove that counsel's conduct fell outside the wide range of professionally competent representation. *Id.* at 690; *People v. Sherman,* 172 P.3d 911, 913 (Colo. App. 2006). To establish prejudice, the defendant must show that "but for" counsel's performance, the outcome would have been different. *Strickland,* 466 U.S. at 694. A claim must be denied if a defendant fails to prove either deficient performance or prejudice. *Id.*; *People v. Chipman,* 2015 COA 142, ¶ 32.

¶ 28    The *Strickland* test is the appropriate measure for ineffective assistance by appellate counsel. *Silva v. People,* 156 P.3d 1164, 1169 (Colo. 2007). A claim of ineffective assistance of counsel may stem from a multitude of allegations, including — as relevant here — that trial counsel failed to present the case effectively by overlooking a meritorious defense that was more likely to succeed than the defense presented. *People v. Trujillo,* 169 P.3d 235, 238

10

(Colo. App. 2007). However, counsel is not required to present every nonfrivolous issue a defendant desires to raise. *Id.* Indeed, a central role of appellate counsel is to focus on the issues that present the best chance of achieving success, rather than raising every potential error that arguably occurred.

### B. Analysis of the Alibi Defense

#### 1. Additional Facts

¶ 29    Shortly after Fleeks's arrest, Duran approached trial counsel and told them that she could provide an alibi for Fleeks's whereabouts because she was with him at the time of the burglary. She also provided trial counsel with screenshots of a receipt of the pizza that they purchased and a written statement in which she claimed that they were together on the night of the burglary. Trial counsel endorsed Duran as a witness but did not ultimately call her to testify or request an alibi instruction.

¶ 30    Trial counsel's theory of defense was that Marquez and Bissell "concocted a story to get back at Duran" as revenge from a perceived wrong that Duran perpetrated against Marquez. Trial counsel told the jury that Marquez was angry with Duran because she had accused him of assaulting her, and that Marquez was also

angry with Fleeks because of his relationship with Duran. So, defense counsel argued, Marquez conspired with his former friend and former roommate, Bissell, to stage the burglary and assault. Counsel forecasted in opening statement that the evidence would demonstrate that Bissell's and Blea's accounts of the crime and their identification of Fleeks were simply not credible.

¶ 31 To support this contention, the defense presented evidence challenging the credibility of Bissell's and Blea's accounts of the story including timeline inconsistencies, discrepancies in how they initially recounted the burglary, and deficiencies in the police investigation.

¶ 32 In 2022, at the postconviction hearing, Duran stated that if she had been called as a trial witness she would have testified that (1) Marquez had previously threatened to ruin her life if she ended their romantic relationship; (2) the night of the alleged burglary was particularly memorable to her because that was when she and Fleeks consummated their romantic relationship and because the pizza delivery person repeatedly called her that night because he was lost; and (3) she and Fleeks were together until around 4 a.m. on the night of the burglary.

## 2. The Parties' Contentions

¶ 33    Fleeks contends that he was prejudiced by the failure to call Duran because she would have supported his contention that the alleged crimes were staged and he could not have committed them because he was with her the entire evening.

¶ 34    The People argue that the failure to request an alibi theory of the case instruction was not prejudicial because the alibi theory was merely in service of the overarching theory that Fleeks was set up, which was adequately communicated to the jury. Moreover, they argue, the alibi defense could have undermined the presented defense because Duran's testimony would have been effectively negated by inconsistencies in her timeline, her past conflicts with Marquez, and her desire to help Fleeks. Given these dynamics, coupled with the strength of Bissell's and Blea's testimony, the People argue that the result of the trial would not have been different even if Duran had testified.

## 3. Analysis

¶ 35    In assessing the prejudice prong of the *Strickland* test, the postconviction court framed its analysis by asking whether the evidence admitted at trial was sufficient to convict Fleeks even if the

alibi defense had been presented. Neither the postconviction court nor the parties point us to case law applying a sufficiency of the evidence test in this context. Although the sufficiency of the evidence paradigm may be a useful starting point, we tether our analysis to the more traditional formulation of this inquiry — whether there is a "reasonable probability" that but for trial counsel's deficient performance, the "result of the proceeding would have been different." *Davis v. People*, 871 P.2d 769, 772 (Colo. 1994) (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

¶ 36    In finding no prejudice caused by the omission of the alibi evidence, the court pointed to the strength of the People's evidence, including the swelling, bruising, and dried blood on Bissell's face when police arrived on scene, Blea's initial description that matched Fleeks, Blea's subsequent identification of Fleeks in photos from Duran's social media, and Blea's testimony that she heard Fleeks refer to himself as Dolla and the subsequent phone recording in which Fleeks referred to himself by the same nickname.

¶ 37    While acknowledging that Duran's testimony may have provided some benefit to the defense's theory of the case, the postconviction court also reasoned that Duran's testimony had some problems, including that the pizza receipt was in Duran's name only and was timestamped near 11 p.m., which would not have undermined Bissell's and Blea's account that the incident occurred around 2 a.m.  Moreover, the jury may have concluded that the complicated relationship between Duran, Marquez, and Fleeks, including Duran's back-and-forth romantic relationship with Marquez, provided her with a motive to fabricate the alibi testimony.

¶ 38    Given the strength of Bissell's and Blea's testimony, and the vulnerability of Duran's alibi evidence, we cannot say that the postconviction court erred by concluding that the result of the trial would not have been different even if the alibi defense had been properly preserved and presented.

### C.    Remaining Trial Counsel Claims

¶ 39    Fleeks also appeals the postconviction court's summary denials of his claims that trial counsel was ineffective in three additional ways: first, by erroneously shifting the burden during

15

opening statements; second, by not preparing Fleeks to testify and rendering his ability to testify impracticable by presenting an inconsistent defense, thus effectively depriving him of the ability to make a knowing and voluntary waiver of his right to testify; and finally, by failing to stipulate to his nickname, which resulted in the prosecution playing a jail recording, in which he refers to himself as Dolla. We address each contention in turn.

¶ 40 As it relates to the burden of proof, the postconviction court summarily denied Fleeks's claim that trial counsel shifted the burden of proof to the defense by saying during opening statements that it would produce evidence of a setup. The court found that assertions that the allegations were false, the witnesses were biased, and that the police department failed to investigate claims was not tantamount to shifting the burden of proof. We agree. Moreover, trial counsel delivered on its assertion that it would provide evidence that Bissell's and Blea's testimony was inconsistent and evolving. Thus, we discern no error in the court's summary denial of this claim.

¶ 41 We also conclude that the court did not err by summarily denying Fleeks's claim that trial counsel's conduct deprived him of

the ability to make a knowing, voluntary, and intelligent waiver of his right to testify. The trial court fully advised Fleeks of his right to testify. And after the advisement, Fleeks confirmed that he was making a personal, knowing, and voluntary decision to waive his right to testify. Seconds later, trial counsel stated that they would present no additional evidence. Despite his appellate arguments, Fleeks did not protest the decision not to call Duran. Nor did he inform the court that the absence of Duran's testimony impacted his waiver of the right to testify. Given these circumstances, the postconviction court did not err by summarily denying this claim.

¶ 42 Finally, we reject Fleeks's contention that trial counsel was ineffective by failing to stipulate that Fleeks used the nickname Dolla. Trial counsel filed a pretrial motion to suppress the video of the phone call, which was denied. Counsel also obtained a stipulation from the prosecution that only a brief sound recording of the conversation would be admitted. Moreover, Fleeks offered no evidence to suggest that the prosecution would have accepted a stipulation without introducing some portion of the recording. *See People v. Morales*, 2012 COA 2, ¶ 9 ("The prosecution is generally entitled to prove the elements of its case against a defendant by

17

evidence of its own choice, and a defendant 'may not stipulate or admit his way out of the full evidentiary force of the case as the [prosecution] chooses to present it.'") (quoting *Old Chief v. United States,* 519 U.S. 172, 186-87 (1997)). Thus, we discern no deficiency in trial counsel's performance on this issue. Moreover, as the postconviction court noted, the phone recording was very short and there was substantial evidence identifying Fleeks as the perpetrator. So, we cannot say that the postconviction court erred by summarily denying this claim.

### D. Appellate Counsel's Alleged Ineffectiveness

¶ 43 Finally, Fleeks contends that appellate counsel was ineffective because they failed to inform him of his right to move for a sentence reduction under Crim. P. 35(b). Under Rule 35(b), a defendant may seek a sentence reduction within eighteen weeks after the entry of "any order or judgment of the appellate court denying review or having the effect of upholding a judgment of conviction or sentence." Crim. P. 35(b). Fleeks contends that appellate counsel's failure to take any subsequent action after the *Fleeks I* mandate was issued was ineffective assistance.

18

¶ 44     However, this claim also fails because Fleeks does not allege prejudice.  Fleeks did not allege in his motion, and does not argue on appeal, that he had new or mitigating evidence to present in support of a request for a sentence reduction.  Indeed, neither in his motion nor on appeal does Fleeks contend that, if the motion had been filed, there was a reasonable probability that it would have been granted and his sentence would have been reduced.  Therefore, the postconviction court did not err by summarily denying this claim.

### III.    Disposition

¶ 45     The postconviction court's order is affirmed.

JUDGE FOX and JUDGE HARRIS concur.