23CA2017 Peo v Vigil 08-21-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2017
Adams County District Court No. 13CR1549
Honorable Donald S. Quick, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Robert Fidencio Vigil,

Defendant-Appellant.

---

ORDER AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Christopher Gehring, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1     Defendant, Robert Fidencio Vigil, appeals the postconviction court's order denying his Crim. P. 35(c) motion.  We affirm.

## I.     Background

¶ 2     In 2013, a grand jury indicted Vigil on violations of the Colorado Organized Crime Control Act (COCCA) and multiple counts of distribution of a controlled substance (methamphetamine), possession of methamphetamine with the intent to distribute, and conspiracy to possess and distribute methamphetamine.

¶ 3     At trial, the prosecution presented surveillance photographs and videos, text messages between Vigil and his associates, and recordings of phone calls between Vigil and his associates that law enforcement obtained through a wiretap investigation.

¶ 4     The prosecution also presented testimony from many witnesses, including three of Vigil's codefendants; a wiretap monitor, Alicia Genth; and the lead detective.  Vigil's codefendants testified regarding certain wiretap phone calls, identified Vigil on the calls, and gave their impressions of the meaning of what was said.  Genth testified about her role as monitor for the wiretap investigation.  The prosecution did not endorse Genth as an expert.

1

After being qualified as an expert in drug trafficking investigations, the lead detective testified about the wiretap investigation and surveillance measures.

¶ 5     The jury convicted Vigil of fifty-one counts, including two COCCA violations.  The trial court sentenced him to an aggregate term of thirty-five years in the custody of the Department of Corrections (DOC).

¶ 6     Vigil directly appealed his conviction, and a division of this court affirmed.  *People v. Vigil*, (Colo. App. No. 15CA0902, Nov. 17, 2016) (not published pursuant to C.A.R. 35(e)).  On appeal, Vigil argued that the trial court erred by denying his request for a mistrial and admitting summaries of the prosecution's evidence.  *Id.* at ¶ 3.  In rejecting Vigil's contentions, the division noted that "the admissible evidence against Vigil was overwhelming."  *Id.* at ¶ 12.  The mandate was issued on May 1, 2017.

¶ 7     After Vigil filed a Crim. P. 35(b) motion for sentence reconsideration, the postconviction court resentenced him to an aggregate twenty-five-year DOC sentence.

¶ 8     In June 2019, Vigil filed a timely pro se Crim. P. 35(c) motion, asserting approximately twenty-nine claims.  Two years later,

appointed counsel supplemented the motion, raising two additional claims. As pertinent here, the supplement alleged that trial counsel was ineffective for failing to object to Genth's testimony under CRE 701 and 702 because her testimony was expert opinion under the guise of lay testimony. Specifically, the supplement claimed that Genth's testimony was expert testimony because it was based on specialized knowledge and training. And it asserted that the lack of objection prejudiced Vigil at trial and on direct appeal.

¶ 9 The postconviction court granted a hearing on the supplemental claims and several of the pro se claims; it summarily denied the remaining claims. At the evidentiary hearing, an expert in criminal defense practice, Randy Canney, testified for the defense.

¶ 10 The postconviction court denied the claims it addressed at the hearing in a written order.

## II. Discussion

¶ 11 On appeal, Vigil contends that the postconviction court erred by denying his claim that trial counsel was ineffective for failing to object to Genth's testimony under CRE 701 and 702. He argues that Genth presented expert testimony because her testimony could

3

not have been offered without specialized experience, knowledge, or training. And he argues that counsel's failure to object prejudiced him at trial and on direct appeal. We reject this contention because Vigil has failed to establish the necessary showing of prejudice required for a claim of ineffective assistance.

¶ 12 We further note that Vigil has abandoned the remaining claims from his pro se and supplemental motions by not reasserting them on appeal. *See People v. Hunsaker*, 2020 COA 48, ¶ 10, *aff'd*, 2021 CO 83.

### A. Applicable Law

#### 1. Ineffective Assistance of Counsel

¶ 13 A criminal defendant is constitutionally entitled to effective assistance of counsel. *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). To obtain reversal of a conviction due to ineffective assistance of counsel, a defendant must show that (1) counsel's performance was deficient, and (2) he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord Dunlap v. People*, 173 P.3d 1054, 1062 (Colo. 2007).

¶ 14 Counsel's performance is deficient when it falls "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

4

Determining whether counsel's performance meets this standard requires that every effort be made to eliminate "the distorting effects of hindsight" and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

¶ 15    To establish prejudice, the defendant must demonstrate "a reasonable probability" that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694.  A reasonable probability is one that is "sufficient to undermine confidence in the outcome." *Id.*

¶ 16    If a postconviction court determines that a defendant has failed to prove either prong of the *Strickland* test, it may deny the ineffective assistance claim without addressing the other prong. *Id.* at 697.

## 2.    Lay Versus Expert Testimony

¶ 17    Under CRE 701, lay opinion testimony is testimony that is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

¶ 18    In contrast, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  CRE 702.  Expert testimony "is that which goes beyond the realm of common experience and requires experience, skills, or knowledge that the ordinary person would not have."  *Venalonzo v. People*, 2017 CO 9, ¶ 22.

¶ 19    "[T]he critical factor in distinguishing between lay and expert testimony is the basis for the witness's opinion."  *Id.*

> If the witness provides testimony that could be expected to be based on an ordinary person's experiences or knowledge, then the witness is offering lay testimony.  If, on the other hand, the witness provides testimony that could not be offered without specialized experiences, knowledge, or training, then the witness is offering expert testimony.

*Id.* at ¶ 23.  "[T]estimony is not automatically considered expert opinion testimony simply because the witness has extensive training and experience — it is the basis of the witness's opinion that is determinative."  *People v. Murphy*, 2021 CO 22, ¶ 32.

6

## B.     Standard of Review

A claim of ineffective assistance of counsel following an evidentiary hearing presents a mixed question of fact and law. *People v. Sharp*, 2019 COA 133, ¶ 12.  We defer to the postconviction court's factual findings if they have record support, but we review any legal conclusions — including the court's determinations on *Strickland*'s performance and prejudice prongs — de novo.  *Id.*

## C.     Genth's Testimony

Genth first testified about her training, indicating that she was bilingual and globally certified to make bilingual translations.  She also said she had to take a test to work for her company because "[t]here are different types of lingo and different types of manners of people speaking; and we are certified for that, whether we understand it or not."

Genth then testified about her role as monitor in a wiretap investigation.  She explained that she reviewed affidavits and warrants to determine which people and what types of information were relevant to the investigation; assisted with the creation of an organizational chart; identified people on the calls by their voices,

7

speech patterns, and use of "code words"; determined which calls were pertinent to the investigation (a technique called "minimization") based on who was speaking and what they said; and, once a call started, typed up a summary of the conversation. Regarding voice recognition, Genth testified that

> we are trained, because of our trade and because of the experience that we have doing wires, we are trained to identify certain voice patterns.
>
> Language is specific to certain individuals, the way they say hello, the way they say good-bye, the way they relate to each other. And based on those patterns, we can recognize the same individual even if it happens that that individual . . . calls from a different number than the one that we usually are used to hav[ing] that individual call.

¶ 23    The prosecution also laid the foundation for exhibits 1-A through 20-A via Genth's testimony. These exhibits contained summaries of wiretap calls that occurred during particular periods of time. Genth explained what the call summaries included and talked about a specific call for which an individual by the name of "Uneik" was the target phone number. Several other witnesses identified "Uneik" as Vigil's moniker.

## D. The Hearing

¶ 24 At the evidentiary hearing, Canney opined that trial counsel performed deficiently under the first prong of *Strickland* by failing to object to Genth's testimony under CRE 701 and 702 because Genth "really was testifying in effect as an expert." He reasoned that Genth's testimony was based on "specialized training and experience" in "specific lingo," computer applications, "things that relate to drug offenses," organizational charts, and whether a call was pertinent or not. Canney explained that Genth was not just a transcriber but had interpreted the contents of the phone calls and formed an opinion on "what's pertinent, what's relevant, what was said, and who was saying it," which ultimately formed the call summaries contained in exhibits 1-A through 20-A.

¶ 25 Canney also testified that the lack of objection from trial counsel limited appellate counsel in terms of raising the admission of the testimony on direct appeal: "Had they tried to raise the issue, they would have had to raise it under a plain error standard, which is a much more difficult standard. . . . Had the . . . objection been made, either they would have been successful at the trial level and that would have kept out ostensibly some significant evidence, or it

would have preserved a very good appellate issue." Nonetheless, on cross-examination, Canney stated that he did not come to a conclusion on the prejudice prong of *Strickland*.

¶ 26 Postconviction counsel argued that trial counsel performed deficiently by failing to object to Genth's testimony under CRE 701 and 702 because Genth testified based on "specialized knowledge, training, [and] experience." Specifically, Genth discussed the minimization process; "render[ed] an expert opinion when providing . . . law enforcement with the pertinent calls"; participated in the creation of an organizational chart; engaged in voice recognition; interpreted, not merely transcribed, the calls; and explained to the jury how to read the call summaries.

¶ 27 Postconviction counsel also argued that trial counsel's deficient performance prejudiced Vigil because the defense did not have an adequate opportunity to prepare, the trial court may not have admitted the call summaries without Genth's testimony, and Vigil's direct appeal was limited.

¶ 28 The prosecution argued that Genth did not testify as an expert because "talking about the credentials doesn't automatically transform a witness's further testimony into expert testimony," and

Genth did not interpret the calls for the summaries, but merely "listened to calls, listened to words, made sure that they were on the right phone numbers and then documented them." The prosecution also asserted that Genth was "simply laying the foundation for the summaries of the phone calls." As to prejudice, the prosecution argued that Vigil was not prejudiced because the evidence against him was overwhelming, and the information testified to by Genth also came in through the lead detective and the three codefendants.

E.    The Postconviction Court's Order

¶ 29    In its written order denying Vigil's claims, the postconviction court made the following factual findings with respect to Vigil's ineffective assistance claim related to Genth's testimony:

- Genth testified at trial that it was her job to "transcribe and translate calls that come into the wire, in through the wire form."

- Genth's testimony was used as a foundation to admit the call summaries, which were ultimately admitted into evidence.

11

- Genth also testified that an investigator gave her criteria to look for in the calls that were being monitored, including a list of "different words" that drug dealers commonly used for the sale of narcotics and the names of suspects in the investigation. Genth translated the calls that contained these words and names.

- Genth testified that she engaged in minimization, during which she deemed certain calls concerning personal matters nonpertinent to the investigation.

- The prosecution did not qualify Genth as an expert.

- Defense counsel objected to the call summaries on different grounds at trial, arguing that they were cumulative and improperly bolstered certain evidence. The trial court admitted the call summaries after hearing Genth's foundation, and the division on direct appeal affirmed this decision.

- Canney testified at the evidentiary hearing as an expert in criminal defense and postconviction proceedings and standards.

- Canney's testimony was in support of the defense's position that trial counsel was ineffective for not objecting to Genth's testimony as expert testimony.

¶ 30    The postconviction court concluded that "the majority of [Genth]'s testimony did not involve expert opinions." The court also concluded that

> the instructions to look for "names" or "code terms" used to identify the nature of a call were not "scientific[], technical or other specialized knowledge" within the meaning of CRE 70[2]. This "non-specialized" knowledge simply provided that the calls [Genth] translates must meet these two easily understood criteria. The Court also notes that the criteria provided to [Genth] was subject to cross-examination by defense counsel of both [Genth] and the detective that gave the instructions to [Genth].

Therefore, the court found that trial counsel was not ineffective for failing to object to Genth's testimony under CRE 701 and 702 "concerning her selection of calls that should be translated and logged." Additionally, the court found that Vigil had failed to demonstrate prejudice because, "even if it was expert testimony, the three witnesses who discussed the drug transactions on the phone with [Vigil] testified at the trial."

13

¶ 31    The postconviction court made further findings regarding

Genth's voice recognition testimony:

> Genth testified that she had been specifically
> trained in voice recognition and therefore could
> identify certain voices that were on the
> numerous calls she monitored. . . .  The voice
> recognition training taught her to "identify
> certain voice patterns" and recognize that,
> "language is specific to certain individuals . . .
> the way they say hello, the way they say
> goodbye . . . ."  Thus, the voice recognition
> testimony of [Genth] was based on knowledge
> and training that was "scientific and
> technical."  That testimony included expert
> opinions.  Trial Counsel should have objected
> to that portion of [Genth]'s testimony as being
> expert testimony. . . .  [T]his Court agrees with
> [Canney]'s testimony that failing to object to
> the expert voice recognition testimony
> identifying their client was "outside the range
> of professionally competent counsel."

Therefore, the court concluded that Vigil had established the first

prong of *Strickland* with respect to the voice recognition testimony.

However, the court determined that Vigil had failed to establish

*Strickland* prejudice because calls were admitted through the three

codefendants' testimony, and the lead detective was available to lay

a foundation for the call summaries and testified that he supervised

Genth, listened to the calls, and set the parameters for

minimization.

## F. Analysis

¶ 32      We will assume, without deciding, that Genth provided expert testimony and that Vigil's counsel performed deficiently by failing to object to it as expert testimony under the guise of lay testimony. Nonetheless, we affirm the postconviction court's denial of Vigil's claim because he failed to establish the necessary quantum of prejudice. *See Strickland*, 466 U.S. at 697. Vigil contends that he was prejudiced because (1) without Genth's testimony, the call summaries would not have been admitted; (2) without Genth's specialized knowledge and training, she would not have been able to identify Vigil on a call during her testimony; (3) Genth's testimony impermissibly bolstered her and the codefendants' testimony; and (4) trial counsel's failure to object to Genth's testimony meant that, if he had raised the admission of the testimony on direct appeal, it could only be reviewed under the more onerous plain error standard. Because of the cumulative and overwhelming nature of the other evidence against Vigil, we reject these contentions.

¶ 33      First, the three codefendants testified regarding approximately forty-seven separate wiretap calls with Vigil over a series of dates.

They identified themselves and Vigil on the calls, deciphered the code words used on the calls, and explained the context of the conversations in terms of methamphetamine possession and distribution. Their lengthy testimony about Vigil's involvement in methamphetamine possession and distribution comprised hundreds of pages of transcript and delved into great detail regarding dates, money, sources, and transactions.

¶ 34     Second, the lead detective, who was qualified as an expert, testified regarding the wiretap evidence. He spoke about his supervision of wiretap monitors; the minimization process; the details of the call summaries; and the fact that Vigil's moniker was "Uneik." The detective also testified about individual calls involving Vigil, identifying Vigil's voice, and explaining the coded language and context of the calls.

¶ 35     Third, another detective testified about a number of text messages between "Uneik" and "Jugs," from which the detective gleaned that Vigil was supposed to go to "Jugs's" residence to sell methamphetamine. The detective conducted surveillance on the residence that day and observed Vigil there.

¶ 36    Fourth, hundreds of recorded calls and photo, video, and audio surveillance of methamphetamine transactions involving Vigil were admitted into evidence.

¶ 37    Thus, even without Genth's testimony and the admission of exhibits 1-A through 20-A through her foundation, the jury still would have heard substantial evidence regarding the wiretap investigation, including Vigil's participation in numerous calls; the call summaries; the minimization process; "Uneik" as Vigil's moniker; and Vigil's involvement in methamphetamine possession and distribution.  And, as the postconviction court found, the lead detective was available to lay foundation for the call summaries. Given the strength of the evidence against Vigil, we conclude that there was not a reasonable probability that the outcome of his trial would have been different if trial counsel had objected to Genth's testimony under CRE 701 and 702.  *See Dunlap*, 173 P.3d at 1068-69 (the defendant failed to establish *Strickland*'s prejudice prong where overwhelming evidence supported the jury's guilty verdict); *see also Strickland,* 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record

support."); *People v. Griffin*, 985 P.2d 15, 19 (Colo. App. 1998) ("[B]ecause the inferred hearsay statements by the other expert were merely cumulative of other evidence admitted without substantial disagreement, or without objection, and because ample other evidence was introduced to establish defendant's guilt, we conclude that the error in admitting the inferred hearsay statements was harmless.").

¶ 38    Because Vigil failed to establish prejudice under *Strickland*, the postconviction court did not err by denying his ineffective assistance of trial counsel claim after a hearing.

### III.    Disposition

¶ 39    The order is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.